Keating, J.
On the night of January 26,1966 Detectives Lawrence LaB rióla and John Stoehr and two other police officers were sitting in an automobile on East 16th Street between Kings Highway and Quentin Road in Brooklyn. The officers had come there on the basis of a tip received from an undercover member of the Police Department that a pound of marijuana would be passed on the corner of Kings Highway and East 16th Street sometime between 9:00 p.m. and midnight.
The officers arrived at 8:30 p.m. and had been waiting for somewhat more than an hour when a car pulled up and parked across the street from the officers. Inside the car were three teenagers, whom the officers did not know or recognize. Appellant Corrado was in the driver’s seat, appellant Catalan was sitting next to Corrado, and appellant Mossey was in the rear seat behind Corrado.
Catalan got out of the car, walked along the sidewalk toward Quentin Road for about 50 to 60 feet to another car. .He appeared to bend down, but otherwise was out of sight. He remained at the car for a few seconds and then returned. He got back into Corrado’s car and was then observed by the police officers to hand four opaque, manila envelopes to Corrado. After some conversation, Catalan again left the car and started to walk towards Quentin Road. At this point, Corrado was seen to turn around and hand the envelopes to Mossey, who bent down and moved his hands toward the floor.
Corrado started the car. Hearing this, Detective Stoehr, who was driving, moved his automobile across East 16th Street at an angle blocking the path of Corrado’s car. Detective LaB rióla went up to the driver, Corrado, while Detective Stoehr opened *311 the rear door of the car, entered, and seized the four envelopes. They were sealed. Detective Stoehr opened them and found what appeared to him to be marijuana. The envelopes were confiscated and the appellants arrested.
Upon their pleas of guilty, appellants were adjudged youthful offenders. The sole question raised on this appeal is whether there was probable cause to arrest (Code Crim. Pro., § 177). The People do not and cannot contend that the fruits of their search of the car can be used as a basis to establish probable cause. Their position is simply that there is sufficient independent evidence to sustain the arrests.
It cannot seriously be contended, and we do not understand the People to argue, that the objective conduct observed by the officers constituted probable cause. There is nothing suspicious or even particularly unusual about the overt activities of the three youths here. In substance, what the officers observed were three teenagers sitting in a car in the early hours of the night.[1] One of them leaves the car, walks about three car lengths down the street to a second car, bends down for a few seconds and then returns to his companions in the first car. He is then observed to pass some envelopes to the driver, and, after a brief period, leaves. Even if we accept the argument that such demeanor would be characteristic of modus operandi used for a “ drop ”,[2] this conduct is far more easily explained by the typical activities of three teenagers than by the fact that the three were handling contraband. At most, the appellants’ behavior was equivocal and suspicious.
In People v. Valentine (17 N Y. 2d 128) the arresting officer was also sitting in a parked automobile near a street corner in Brooklyn. He observed a man standing on the corner. Six unknown persons approached the man. Each of these persons engaged this man in a short conversation, and, at the conclusion thereof, each was seen to hand him money in bill form. On three of these occasions the man was observed making notations on a slip of paper. Unlike the present case, the only reasonable *312 inference for what was observed by the officer in Valentine was that the man was engaged in policy.
Nor is People v. White (16 N Y 2d 270) comparable to the instant case. We there held that probable cause existed where there was “ a showing that a known addict holding money in his hand and talking to the suspected drug peddler quickly put the money away and left the scene when the detective approached ” (supra, p. 273). Here the appellants were not known to the officers, and no claim is made that the undercover agent had given the officers a description of the appellants (cf. McCray v. Illinois, 386 U. S. 300). Also, there is no evidence that Catalan was attempting to flee when the arrests occurred.
In Henry v. United States (361 U. S. 98) Federal officers were investigating a theft of whiskey from an interstate shipment. On the afternoon of the day following the theft, on the basis of a rather vague tip possibly connecting the defendant with an interstate theft, they observed the defendant with another man come out of a tavern, get into an automobile and drive by a circuitous route to an alley beside a residential premises and stop. The defendant got out of the car, went into the building and returned to the automobile with some cartons and drove away. The Federal agents attempted to follow but lost the car. However, later they saw the car again at the tavern. And, once more, the same pattern was repeated. On this occasion, when the defendant left the alley, the officers stopped the automobile, searched the cartons and found not stolen whiskey, hut stolen radios. The Supreme Court held that no probable cause existed. It is evident, therefore, that the appellants’ conduct here, by itself, could not sustain their arrests since their conduct was no more suspicious than that found by the Supreme Court in Henry to be insufficient to warrant an arrest.
The People argue, nevertheless, that probable cause existed here because there was uncoritradicted testimony by Detective Stoehr that, in his experience as an investigator assigned to the Narcotics Bureau, he had never seen loose marijuana in small quantities passed or sold in envelopes other than in the type *313 involved here.[3] This knowledge, it is claimed, justified the officer in drawing the inference that appellants probably had contraband in theit possession.
The argument is defective because the envelopes could have contained any number of noncontraband items. This is in sharp contrast to the translucent glassine envelope which has come to be accepted as the telltale sign of heroin. Still, even in the case of the glassine envelope it has never been held that the mere passing of such an envelope establishes probable cause. We conclude, therefore, that the testimony concerning the use of these common envelopes for marijuana does not raise the level of inference from suspicion to probable cause.[4]
In reaching our conclusion, we have not retreated in any manner from our prior decisions that a police officer is entitled to draw on his whole knowledge and experience as a criminal investigation officer (People v. Valentine, supra, p. 132; People v. Brady, 16 N Y 2d 186; see, also, Bell v. United States, 254 F. *314 2d 82, cert. den. 358 U. S. 885; Jackson v. United States, 302 F. 2d 194, 196). Thus, where a layman would see absolutely nothing suspicious about the envelopes and the events preceding the arrests, the officer was surely entitled to use his expertise to the contrary. It does not follow, however, that the officer is entitled to draw the inference of criminality when others, possessed of the same special knowledge or expertise, would not (see Henry v. United States, supra, p. 102; Brinegar v. United States, 338 U. S. 160,175).
For the reasons stated, the judgment of conviction should be reversed and the case remitted to the Criminal Court of the City of New York for further proceedings not inconsistent with the views expressed herein.

. There is no evidence in the record that the particular location was frequented by dope pushers or drug addicts.

. Actually, Detective Stoehr denied that he saw Catalan pick up the four envelopes at the second ear.

. During the pendency of this appeal, the seized envelopes were improperly destroyed by the Police Property Clerk’s office. These envelopes constitute an important piece of evidence without which effective judicial review of the suppression hearing might well have been precluded since the record is barren of any description of the size and shape of the envelopes. Absent some evidence in the record to indicate the appearance and dimensions of the envelopes, we must accept the uncontradicted description given by appellants’ counsel at oral argument to the effect that the envelopes were of a small size and common variety, not unlike pay envelopes. Although we do not rest our decision on this basis, it would seem impossible that these small envelopes could have been seen in daytime, let alone at night, from a car parked across the street.

. In determining whether probable cause existed, no weight may be given to the tip. While hearsay evidence may fee used to establish probable cause for a warrantless arrest (McCray v. Illinois, 386 U. S. 300), the “underlying circumstances from which the informant concluded” that there was to be a “ drop ” must be disclosed in order that its significance may be evaluated. (Aguilar v. Texas, 378 U. S. 108, 114.) Also, the record does not indicate whether the lead was based on the personal knowledge or observations of the undercover agent or on information furnished by an informant, whose reliability had been established. (Jones v. United States, 362 U. S. 257, 269; Rugendorf v. United States, 376 U. S. 528; Aguilar v. Texas, supra; United States v. Ventresca, 380 U. S. 102; McCray v. Illinois, supra.) Absent such evidence, the tip is entitled to no weight in determining probable cause. (Aguilar v. Texas, supra; United States v. Warden of Attica State Prison, 381 F. 2d 209.)