Rose L. Rubin, J.
Defendant moves to suppress 11 approximately two inch by two inch manila packages containing marijuana and a .380 caliber Baretta revolver, alleging that they were seized in violation of his rights against unlawful search and seizure under the United States and New York State Constitutions.
A hearing was held on March 6, 1975. Testimony was adduced from Detective Carl Browne, of the New York Port Authority police, who appeared as the People’s witness. Based upon the credible evidence introduced at the hearing, the following are the court’s findings of fact and conclusions of law: According to Detective Browne, he was on duty on May 24, 1974, at Kennedy International Airport, at approximately 2:00 a.m. He observed defendant walking around parking lot No. 1, peering into motor vehicles. Defendant was placing his hands on the door handles and appeared to be trying to open the automobile doors. The detective also observed two other men, who accompanied defendant, trying to open doors of cars in the parking lot and looking into cars. A few minutes later, defendant and the two other men got into a 1969 Chevrolet. Defendant drove the automobile out of the parking lot followed by the detective in his vehicle. Defendant passed all the parking lots in the airport, continued for two and one half miles and was proceeding to exit from the airport.
At the Federal Circle, while still in the airport area, the detective halted defendant’s vehicle. He asked defendant for *452 his car registration and driver’s license. Defendant produced an expired registration in the name of one Allende. Defendant could produce neither a driver’s license nor a current registration. The detective then requested that defendant get out of the car. Shortly thereafter, the other occupants were also asked to exit from the car. On defendant’s leaving the car, the detective looked into the car and observed a brown paper hand towel on the floor of the car near the brake pedal. Within the paper towel, he observed 11 opaque manila envelopes, each approximately two inches by two inches in dimension. The area was sufficiently lighted for the police officer to see the brown towel and the manila envelopes. By reason of his training in street narcotics trafficking, the detective recognized the envelopes as those frequently used for packaging small loose quantities of marijuana. On observing the 11 envelopes, whose contents were not visible, the police officer opened one and verified that the contents appeared to be marijuana. He placed defendant under arrest. A search was made of the vehicle. The search disclosed a current registration of the vehicle in the glove compartment and, under the front seat, the loaded revolver which is in issue on this motion. The automobile was impounded in accordance with police procedure.
In contending that the search and seizure of the marijuana and the revolver were illegal, defendant relies primarily upon the case of People v Corrado (22 NY2d 308). In that case, police officers, at about 8:30 p.m. on January 30, 1966, surveilling a Brooklyn street on which they had been informed a narcotics sale would take place, observed one of three teenagers leave a car and walk 50 to 60 feet to another car. After several seconds at the second car where the teenager appeared to bend down, he returned to his own car and was observed handing four manila envelopes to one of his companions. The manila envelopes described in that case appear to be similar to the ones seized in this case. On a motion to suppress, the court in Corrado concluded there was an absence of probable cause to arrest under section 177 of the Code of Criminal Procedure. The court (p 311) found: "There is nothing suspicious or particularly unusual about the overt activities of the three youths here.” The court went on to comment that the conduct "is far more easily explained by the typical activities of three teenagers than by the fact that the three are handling contraband.”
*453 This case is clearly distinguishable from Corrado. Here the conduct arousing the officer’s suspicion occurred at 2:00 a.m. in the J.F.K. International Airport parking lot, as distinguished from Corrado where the activities occurred at 8:30 p.m. on a major city thoroughfare. This court takes judicial notice of the fact that Kennedy International Airport is the locus of a high concentration of criminal activities (see Waterfront Commission of New York Harbor Report on True Extent of Cargo Thefts at the New York — New Jersey Airports [1975]). Detective Browne observed activity which appeared to be purposeful on the part of three adults and could reasonably be construed as efforts to steal a car or its contents. As distinguished from the acts in Corrado, the behavior of defendant and his two companions was both suspicious and unusual. Paraphrasing the language of Corrado, the actions here could not be designated as typical activities of three adults.
When defendant and his two companions left the parking lot in the Chevrolet which defendant was driving, the police were justified in halting the car for the purpose of conducting an investigation. Additional significant differences from Corrado are found in the failure of defendant to produce a current vehicle registration or a driver’s license. This failure added further substance to the police officer’s suspicions. The final distinction is the observation by the detective in open view on the floor of the car of the paper towel and the 11 characteristic manila packets contained in it. From all appearances, the paper towel was being used to conceal the packets since the ends had bt-en crushed together as if to form a coverup for the packets. The relatively large number of packets apparently sought to be concealed by the paper towel wrapping on the floor of the car, under the totality of the circumstances, was sufficient to create probable cause in the mind of a trained police officer.
In Corrado (supra, pp 313-314), the court issued the following significant admonition: "In reaching our conclusion, we have not retreated in any manner from our prior decisions that a police officer is entitled to draw on his whole knowledge and experience as a criminal investigation officer (People v Valentine, supra, p 132; People v Brady, 16 NY2d 186; see, also, Bell v United States, 254 F 2d 82, cert den 358 US 885; Jackson v United States, 302 F 2d 194, 196).”
There is little question as to the right of the police in this case to stop the vehicle to examine the driver’s, here defend *454 ant’s, license and registration. Subdivision 4 of section 401 of the Vehicle and Traffic Law requires a motorist to produce, among other information, registration and license documentation upon demand by a police officer. This section, together with subdivision 2 of section 507 of the Vehicle and Traffic Law, makes failure to produce such documentation presumptive evidence of the absence of such license and registration.
As a threshold consideration, the degree of suspicion required to justify the stopping of an automobile for an investigatory check is minimal. The suspicious actions of defendant and his companions in the airport parking lot at such an early hour of the morning are clearly sufficient cause to justify the pursuit of the vehicle and the stop to investigate by police officers deterring and investigating crimes involving public safety and property at the airport, a high crime area. (See People v Rivera, 14 NY2d 441; People v Singleteary, 35 NY2d 528.) The defendant’s failure thereafter to produce either a driver’s license or a current vehicle registration led to the insight observation of the 11 telltale manila envelopes protruding from the paper towel, containing the marijuana. The search and seizure of the marijuana at that point was, therefore, wholly within conventional doctrine as to probable cause. The discovery of the revolver while searching the vehicle, subsequent to the arrest of defendant, was also consistent with well-recognized principles and police procedure. (Preston v United States, 376 US 364; Chambers v Maroney, 399 US 42; Cooper v California, 386 US 58; see, also, People v Sullivan, 29 NY2d 69; People v Robinson, 36 AD2d 375.)
It follows, therefore, that the contraband was lawfully seized within the constraints of the United States and the New York State Constitutions. Accordingly, the defendant’s motion to suppress is denied.