THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD FRANK RIZZO, Appellant.

Second Department, May 5, 1975

*Alexander J. Chase (Anthony M. Parlatore [Zale & Parlatore]* of counsel), for appellant.

*Henry F. O'Brien, District Attorney (Selig Rosenzweig* of counsel), for respondent.

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz* of counsel), *pro se,* intervening pursuant to section 71 of Executive Law.

RABIN, Acting P. J. The defendant, Ronald Frank Rizzo, was convicted after a jury trial of possession for sale of non-tax-paid cigarettes in violation of article 20 of the Tax Law. The cigarettes were seized, without the benefit of a warrant, from the garage of Rizzo's residence by an investigator for the Department of Taxation and Finance of the State. After a hearing, Rizzo's motion during trial to suppress the cigarettes, on the ground that they had been seized in violation of his Fourth Amendment rights, was denied "only because of the statutory grant of power given under section 474 of the Tax Law," which provides in pertinent part as follows: "The tax commission is hereby authorized to examine the books, papers, invoices and other records of any person in possession, control or occupancy of any premises where cigarettes are placed, stored, sold or offered for sale, and the equipment of any such person pertaining to the stamping, sale and delivery of cigarettes taxable under this article, as well as the stock of cigarettes in any such premises or vehicle. To verify the

accuracy of the tax imposed and assessed by this article, each such person is hereby directed and required to give to the tax commission or its duly authorized representatives, the means, facilities and opportunity for such examinations as are herein provided for and required." At the hearing, the court declined to hold the statute unconstitutional, although it did state that in the absence of the statutory authorization, the cigarettes would be inadmissible under the standard requirements of the Fourth Amendment. The Tax Law does not contemplate or authorize a search and seizure such as here conducted and therefore the judgment should be reversed and the motion to suppress granted, on the ground that the cigarettes were seized as a result of an unreasonable search prohibited by the Fourth Amendment.

The State investigator was acting on the basis of a cigarette tax evasion complaint referred to him by his superior. The complaint apparently indicated that a Ronald Rizzo had been arrested in New Jersey in possession of approximately 400 cartons of untaxed cigarettes and it listed two New York addresses in connection with Rizzo. After a four-day unfruitful surveillance at one of these addresses, the investigator placed the premises at the other address, the one here in question, under surveillance. Two hours later, the investigator saw a man open the garage door of the premises. At the time, the investigator did not know that this was Rizzo, although the man matched the description in the complaint. After observing Rizzo place some items in the trunk of an automobile, the investigator approached the garage. Rizzo attempted to close the garage door, but the investigator prevented this by placing his hand under the door. The investigator testified that, as he approached, and momentarily before he placed his hand under the closing garage door, he observed a half case, or 30 cartons, of various brands of cigarettes inside the garage. He identified himself to Rizzo as a State officer and proceeded to examine the cigarettes on the garage floor to determine whether they bore the State tax stamps. Rizzo was not asked for permission to enter the garage and "didn't say yes or no" with respect to the investigator's entry. Finding the cigarettes untaxed, the investigator seized about 90 cartons of cigarettes from the garage and about 54 cartons from inside the trunk of the car and placed Rizzo under arrest.

On these facts, the search and seizure were not authorized by section 474 of the Tax Law. It may first be noted that

section 474 authorizes the tax commission to "examine" books, stocks of cigarettes, etc. It is not at all clear that the authority to "examine" or inspect includes the right to enter and search without consent (see *Colonnade Corp. v United States,* 397 US 72; cf. *Matter of Finn's Liq. Shop v State Liq. Auth.,* 24 NY2d 647, cert den 396 US 840). More important, even assuming that the authority to inspect includes the right to enter and search, I do not interpret the statute as contemplating entry and search of a *residence,* without consent.

With allowances for some factual variations (e.g., transporting untaxed cigarettes or secreting records off premises), the language of section 474 indicates that the Legislature contemplated primarily a situation in which premises are a place of business open to the public, where it will be clear whether the aggrieved party is a person in control of premises "where cigarettes are placed, stored, sold or offered for sale." In the present case, the only thing connecting Rizzo with the statute at the time the entry and search took place is the suspicion of the investigator in the field. This suspicion was based on his observation of 30 cartons of cigarettes in the garage and his hearsay information that a person named Ronald Rizzo had been in possession of untaxed cigarettes in New Jersey and might have a connection with the premises. This information is clearly insufficient, with regard to the entry into a residence, to bring into play whatever search and seizure powers the tax statute does grant. The quantity of cigarettes observed was too small, the probability of storage and sale from a residence too weak, and the privacy interest invaded too great. On connections as tenuous as these, it cannot be said that there is a basis sufficient to reasonably invoke the inspection powers of the tax statute pertaining to premises where cigarettes are stored. To interpret the statute as the People request would be to approve a system of "inspection", the practical effect of which would be to place the decision as to the applicability of the tax statute, and therefore the authority to enter and search a home, in the discretion of the official in the field. As the Supreme Court of the United States noted in *Camara v Municipal Ct.* (387 US 523, 532–533), "This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search."

The People rely heavily upon the recent Supreme Court case of *United States v Biswell* (406 US 311) to support the

legality of the present search. In *Biswell,* a Federal agent demanded access to a locked storeroom on the business premises of a Federally licensed gun dealer. When challenged, the agent asserted that he did not need a warrant to enter and inspect the storeroom and showed the dealer a copy of the Federal statute he relied upon. Stating, "Well, that's what it says so I guess it's okay" *(id.,* p 312), Biswell unlocked the storeroom and the agent seized two sawed-off shotguns which Biswell was not licensed to possess. The Supreme Court upheld the statute and the search against a Fourth Amendment constitutional attack.

In my view, this reliance upon *Biswell* is misguided upon several grounds. However, the primary distinguishing features are that, considering the premises involved, Rizzo's privacy interest was significantly greater than Biswell's, and that in *Biswell* there was no problem, as there is here, with the threshold question whether the administrative statute applied to the premises. Since the test for constitutionality of statutory administrative searches demands balancing the governmental interest involved against any invasion into justifiable expectations of privacy (e.g., *United States v Biswell, supra; Camara v Municipal Ct., supra; See v City of Seattle,* 387 US 541), these discrepancies warrant a result different from that in *Biswell.* The fact that the State intruded upon Rizzo in his home, where justifiable expectations of privacy are particularly strong, mandates that, at the very least, any statutory authorization for such warrantless entry be quite clear and carefully defined (see *Camara v Municipal Ct., supra,* pp 528–529). Section 474 of the Tax Law contains no language clearly authorizing entry and search of a residence without warrant or consent.

Furthermore, Rizzo had no obvious connection with the cigarette industry, formal or otherwise. He had no license and was not clearly holding himself out as a dealer in cigarettes, for example, by the operation of a store open to the public. Here, the determination that, on the basis of the facts known, the statute applied to Rizzo's residence is essentially a judicial determination, which should not be left in the hands of a field investigative officer "engaged in the often competitive enterprise of ferreting out crime" *(Johnson v United States,* 333 US 10, 14). In contrast, Biswell was conclusively associated with the weapons business, he had a Federal license as a dealer and his pawnshop was open to the public. The Supreme Court

specifically noted this connection in upholding the search of his premises: "When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection" *(United States v Biswell, supra,* p 316). In light of these differences, I do not read *Biswell* as authority for the application of section 474 of the Tax Law to the search herein, or for the proposition that an "administrative" search of a residence is constitutional despite the lack of a warrant.

However, since I do not find the seizure here to be within the contemplation of the Legislature in enacting section 474, I do not think it necessary to consider whether the tax statute could be construed, on some other facts, to authorize a warrantless entry and search of a residence in the absence of a waiver of Fourth Amendment rights, or whether such an authorization would be constitutional.

Accordingly, the judgment should be reversed, on the law, the motion to suppress granted and the case remitted to the trial court for further proceedings not inconsistent herewith.

HOPKINS, MARTUSCELLO, COHALAN and CHRIST, JJ., concur.

Judgment of the Supreme Court, Suffolk County, rendered July 17, 1972, reversed, on the law, motion to suppress evidence granted and case remitted to said court for further proceedings.