Walter T. Gorman, J.
This court must decide whether the observation through binoculars by an experienced and expert narcotics police officer of exchanges of glassine envelopes for money, in an area saturated with drug traffic, constitutes probable cause to search the suspected seller.
The defendant was charged with the crime of criminal possession of a controlled substance in the second degree. A hearing was held on her motion to suppress money and contraband allegedly seized from her person. After listening to the testimony of Police Officer Bruce Etheridge and the defendant, the court finds the facts as follows:
Officer Etheridge has been a member of the Police Department of the City of New York for more than six years. On September 23, 1975 his assignment was the Drug Unit of the 28th Precinct. Up to that date, he had made 135 drug arrests, of which 115 involved glassine envelopes.
Armed with a walkie talkie and eight-power binoculars, Etheridge kept Matt’s Bar under surveillance. Starting at 2:00 p.m. on September 23, he stationed himself on the southeast corner of West 114th Street and Eighth Avenue. That area of Manhattan is a heavy heroin locale.
At 2:20 p.m. Etheridge saw the defendant leave Matt’s Bar and stand on the northeast corner of that intersection, about 110 feet away. She talked with three people. Two of these individuals handed the defendant money in bill form and were given glassine envelopes in return. Etheridge radioed defendant’s description to his backup team and the information that she was dealing drugs.
At 2:35 p.m. defendant exited the bar again. She met a Hispanic male at 2113 Eighth Avenue and entered that hallway with him. Etheridge saw the male leave the building while in the act of putting glassine envelopes in his pocket. Defendant returned to the bar.
Etheridge called up his backup team and alerted the officers *181 that the defendant was now in a variety store and it would be a good time to pick her up.
Defendant was stopped and searched. Officer Grayson found $921 in her front pants pocket. At the precinct a female police officer recovered more than an ounce of heroin, packaged in 26 glassine envelopes and four pieces of tinfoil, from defendant’s panty hose.
The defendant’s testimony was unbelievable. She claimed that while hanging around West 114th Street and Eighth Avenue she changed a five dollar bill. She went to a candy store and had a drink of water. Then the police grabbed and searched her. When asked about the source of the $921, she asserted that she was holding it for someone.
The issue raised is what action a trained narcotics police officer may take upon observing suspected drug sales by a single individual in a high narcotics area, where the suspected buyers have eluded capture. Underlying this determination is the role of the glassine envelope in providing probable cause.
Unlike most cases involving similar fact pátterns, here the arrest, search and seizure concerned the purported seller, rather than the alleged buyer, of glassine-envelope-packaged heroin.
The search and seizure were justified on two separate theories. They were founded on probable cause that defendant possessed contraband and were incidental to a lawful arrest for the sale of narcotics.
The court relies heavily on the sighting of glassine envelopes — a strong indication of the presence of heroin (People v Alexander, 37 NY2d 202, 203) and less likely to be utilized for innocuous dealings than manila envelopes (People v Corrado, 22 NY2d 308, 313) or tinfoil packages (People v Colon, 81 Misc 2d 753, 757). Prior to September 23, 1975 the police officer effected 115 arrests for narcotics violations in which glassine envelopes were used. Furthermore, the receipt of money in bill form by the defendant from two of the recipients of the glassine envelopes strengthens this belief that nefarious activities were underway. It is difficult to imagine anything contained in glassine envelopes, other than controlled substances, being worth money in bill form and being purchased without examination by the buyer. Also significant is the high incidence of narcotic activity in the area (People v Oden, 36 NY2d 382, 385). On cross-examination the officer testified that, in his opinion, everyone in the area possessed drugs. These factors *182 coupled with the expertise and experience of the officer and the "repeated pattern” of apparent narcotics transactions (People v Valentine, 17 NY2d 128, 132) add up to probable cause to conclude that drug sales were taking place. Under these circumstances, it would be naive to surmise that anything else was occurring.
This court finds that the police had probable cause to believe that the defendant possessed additional narcotics. None of the officer’s observations indicated that she had exhausted her drug supply. Accordingly, the arresting and searching of the defendant were proper.
Although concededly not the basis for the search herein, the police had probable cause to arrest the defendant for the sale of narcotics. The subsequent search was incidental thereto and thus lawful.
One potential problem with this ground is the unlikely chance of a successful prosecution where the buyer and alleged contraband are unavailable. The presence of probable cause does not require an arrest, it merely authorizes one. Since an arrest acts only as a means to bring the accused to trial and is not an end in itself, this court would be reluctant to condone an arrest — even if founded upon probable cause— where the law enforcement officials did not consider a conviction possible, were correct in their assessment, and utilized the arrest for other purposes. That situation is not present here. It was certainly reasonable to expect that further investigation, a properly obtained confession or the return of one of the suspected buyers might follow the arrest and produce a legally sufficient case for trial.
No recent appellate decisions conflict with the instant holding. In People v Oden (36 NY2d 382, supra), People v Davis (36 NY2d 280) and People v Bryant (37 NY2d 208) the hearing courts’ findings of no probable cause to seize glassine envelopes were sustained. As the Court of Appeals pointed out, however, it could not disturb findings of fact, unless improper as a matter of law.
In contrast to the present case, in Oden (supra, p 383) no money was exchanged, only a single transaction was seen, and the envelope "appeared white.” In Davis (supra, pp 281-282), the suspected criminal activity was restricted to the sighting of what appeared to be " 'glassine envelopes or the wrapper of a Hershey bar.’ ” In Bryant (supra) the officer saw empty glassine envelopes and a folded 10 dollar bill on the dashboard *183 of the defendants’ car, but no additional suspicious behavior. An Appellate Division decision subsequent to Oden and Davis is likewise distinguishable. In People v Lebron (48 AD2d 800) a police officer witnessed one suspected sale involving a manila envelope.
On the other hand, our State’s highest court has upheld seizures of glassine envelopes in situations where, like here, the surrounding circumstances elevated the suspicions aroused to probable cause (People v Quinones, 33 NY2d 811; People v Cox, 28 NY2d 752; People v Rowell, 27 NY2d 691).
Defendant’s motion to suppress the money and drugs found in her possession is denied.