■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY MONFORTE, IRVING MITRANI, HENRY ACIERNO and ARTHUR BERGAMINI, Appellants.—Appeal by defendants from four judgments (one as to each of them) of the Supreme Court, Kings County, each rendered April 5, 1976, convicting defendants Monforte and Bergamini of possession or transportation for the purpose of sale of unstamped or unlawfully stamped packages of cigarettes, as a felony, and defendants Acierno and Mitrani of the same crime, as a misdemeanor, all upon their pleas of guilty, and imposing sentences. The appeal also brings up for review an order of the same court, dated December 10, 1975, which, after a hearing, denied defendants' motion to suppress physical evidence. Judgments and order reversed, on the law and the facts, motion granted and indictment dismissed. The issue to be decided on this appeal is whether two investigators of the New York State Department of Taxation and Finance had probable cause to conduct the warrantless search which led to the seizure of 4,026 cartons of untaxed cigarettes in the possession of defendants. We find that such probable cause did not exist. The People's case, as set forth in the testimony of the two investigators, is as follows: On an unspecified date in 1974 the State Department of Taxation and Finance received a telephone call whereby it

was anonymously informed that an unknown male was receiving untaxed cigarettes, usually on Thursday and Friday evenings, at 1732 East 3rd Street, in Brooklyn. After ascertaining that no registered dealer or wholesaler was located at that address, the investigators began surveillance of the premises, a residence. Observations were made on Thursday and Friday ·evenings between 6:00 P.M. and 11:00 P.M., from June 18 to July 10, 1974. At least 50 observations were made during that period, with no suspicious activity seen. Subsequently, the investigators continued to make periodic observations three or four times a week through the month of September, again with no sign of suspicious activity. The anonymous informant continued his phone calls during the time in question. On October 1, 1974 the investigators arrived at their surveillance position at about 12:15 P.M. Some 20 minutes later they observed a blue van proceed down East 3rd Street and back into the driveway of No. 1732. The van's registration plates indicated that it was a rented vehicle. After about 10 minutes, one of the investigators left the car, walked down the street, and observed the van backed up to the garage of the house. The rear doors of the van were open and three or four men were unloading packages and stacking them in the garage. The packages were the size of half cases of cigarettes, and were wrapped in brown paper and sealed with masking tape. The investigator could see crayon markings on the packages. He returned to the car and informed the other investigator of what he had seen. They remained in the car. Subsequently, a 1970 Oldsmobile stopped at the intersection where the investigators were stationed. One of the investigators recognized the car as belonging to one Joseph Acierno, "one of the major cigarette violators". However, he did not know whether Acierno was in the car at the time. The driver of the Oldsmobile looked into the investigators' car and then proceeded down East 3rd Street, slowed down in front of No. 1732, and departed. The investigators, believing they had been identified, waited another 15 minutes, then drove down the street and parked in front of the driveway of No. 1732. They got out of the car and walked up the driveway. Two men were in the process of removing the last half cases from the van. A large number of such half cases were already in the garage. The investigators identified themselves and asked the men whether they had bills of lading for the cigarettes (it does not appear that the investigators actually knew at that time that the packages contained cigarettes). Receiving no reply, they tore some of the paper from one of the half cases, revealing cartons of cigarettes. One of the investigators then removed a carton and observed that it bore only North Carolina decals; it contained no New York State tax stamps. Defendants were thereupon placed under arrest. It is clear that, in this case, the Tax Department had no knowledge either of how the informant concluded that illegal activities were taking place or whether the informant was reliable (cf. *Aguilar v Texas,* 378 US 108). Accordingly, the investigators could have had probable cause to conduct this search only if their own independent investigation corroborated the information provided by the informant (cf. *Spinelli v United States,* 393 US 410). In this case, the informant's tip led the investigators to observe the premises in question at least 50 times without the slightest indication of wrongdoing. Far from corroborating the tip, these results attested to its unreliability. Finally, some four months after surveillance began, the investigators observed the following: (1) a rented van delivering a large number of parcels to a residential address; (2) parcels, the size of half cases of cigarettes, wrapped in brown papers, sealed with masking tape, and bearing letters and numbers marked in crayon; (3) a 1970 Oldsmobile slowing down in front of the house in question. The

investigators coupled these observations with their knowledge that: (1) transporters of untaxed cigarettes often operate from rented vans; (2) the parcels involved were almost identical to the normal appearance of parcels containing untaxed cigarettes; (3) the 1970 Oldsmobile belonged to a "major trafficker" in untaxed cigarettes. These facts were insufficient to raise the state of the investigators' knowledge from mere suspicion to probable cause. Even though defendants' conduct was not inconsistent with possession of untaxed cigarettes, it was also and equally susceptible to many innocent interpretations (cf. *People v Vassallo,* 46 AD2d 781, citing *People v Corrado,* 22 NY2d 308). While the investigators testified that untaxed cigarettes are almost invariably transported in packages resembling those seized here, the fact remains that these packages could have contained any number of noncontraband items (cf. *People v Corrado, supra).* Nor is this a case in which the contraband was in open view (see *People v Garafolo,* 44 AD2d 86; *People v Pepitone,* 48 AD2d 135, affd 39 NY2d 907). Here, it was necessary for the investigators to begin their search by tearing open one of the half cases before they could determine that the cigarettes were unstamped and untaxed. The added presence in the general area of the Oldsmobile allegedly belonging to a so-called "major trafficker" does not mandate a contrary result. Concededly, the investigators did not know that Joseph Acierno was in the car at the time. Furthermore, in support of their conclusion that Joseph Acierno was a "major trafficker", the investigators could testify to only one arrest involving him, and they did not know the disposition of that arrest. As for the car itself, although the investigators testified that it had once been seized in connection with the transportation of untaxed cigarettes, they admitted that no cigarettes had been found in the car on that occasion. Thus, the investigators were not dealing with a vehicle known to have previously transported untaxed cigarettes (cf. *People v Farenga,* 52 AD2d 587). Accordingly, the totality of the circumstances here indicated only a mere suspicion of illegal activity. The investigators therefore had no basis to enter the private garage and conduct the search which led to the instant arrests (see *People v Corrado,* 22 NY2d 308, *supra; People v Rizzo,* 47 AD2d 468, affd 40 NY2d 425). Martuscello, Acting P. J., Cohalan, Rabin and Mollen, JJ., concur.