OPINION OF THE COURT
Herbert I. Altman, J.
The following constitutes the opinion, decision and order of the court.
The defendant is accused of criminal possession of a controlled substance in the eighth degree (Penal Law, § 220.03), a class A misdemeanor. The charge is that on May 30, 1979, defendant possessed, with intent to sell, manila envelopes containing phencyclidine hydrochloride, more commonly known as "PCP” and "angel dust”.
Defendant, claiming to be aggrieved by an unlawful search and seizure, has moved pursuant to CPL 710.20 to suppress the controlled substances seized from him on May 30, 1979 by the police.
It is the People’s contention that the seizure of these envelopes was constitutionally proper, as they were the product of a search made incident to a valid arrest of the defendant based upon probable cause.
The People have the burden, in the first instance, of going forward to show the legality of the officers’ conduct. Defendant, however, bears the ultimate burden of proving that the evidence should be suppressed (People v Berrios, 28 NY2d 361).
A pretrial suppression hearing was‘held before me on August 9, 1979, at which Detective Robert E. Jirak, of the New York City Police Department, was the sole witness to testify. I found his testimony to be credible.
I make the following findings of fact. The street upon which the defendant was observed to engage in the conduct that led to his arrest — West 123rd Street — is and has been a center of PCP traffic for the last two to three years. During this period Detective Jirak has personally made or assisted in effectuating 200 to 300 PCP related arrests.
At approximately 5:30 p.m. on May 30, 1979, Detective Jirak took up an observation post in an abandoned building located in the vicinity of West 123rd Street and Seventh Avenue. At about 5:30 p.m., Jirak, employing a pair of Nikon binoculars with "7” power, observed the defendant standing in front of 139 West 123rd Street, a distance of about 70 to 80 feet from *676 his vantage point, which the binoculars converted to a visual distance of 10 to 15 feet. Jirak saw the defendant hand a manila envelope to an unidentified man, who sniffed it and returned it to him. Seconds later, the defendant handed a manila envelope to another unidentified man, who took it and departed, without sniffing it. Throughout the duration of Jirak’s observation of the defendant’s activities, he saw no money exchange hands.
Jirak then transmitted defendant’s description to a backup team, which arrested the defendant a few minutes later in front of 166 West 123rd Street. The backup team arrested the defendant and proceeded to search him, recovering four manila envelopes from his person.
Jirak testified that sniffing of the merchandise is commonly associated with PCP transactions.
I make the following conclusions of law. Before an officer may arrest an individual for a crime, it must be demonstrated that probable cause existed for the officer’s belief that such individual had committed or was committing such crime (CPL 140.10, subd 1, par [a]). Where, as in the instant case, police officers arrest an individual at the direction of or as a result oí a communication received from a brother officer, such arrest will be upheld as proper, provided that the quantum oí information possessed by the directing officer constituted probable cause to arrest (People v Horowitz, 21 NY2d 55, 60). Ii probable cause for arrest is established, evidence that is the product of a search incident to the arrest is admissible at trial (Chimel v California, 395 US 752, 759; People v Weintraub, 35 NY2d 351).
In the case at bar, the People contend that the sum total of the activities that Detective Jirak observed transpiring from his vantage point, when taken together with the facts that he was experienced in the observation and arrest of narcotics violators in the area and that the observation area was heavily trafficked by purveyors of PCP, constituted probable cause for the arrest of the defendant for the crime with which he is charged.
For the reasons hereinafter stated, I have concluded that the People have failed to meet their burden of going forward to demonstrate that probable cause existed for the arrest of the defendant.
Our Court of Appeals has held that manila envelopes are, in fact, more often utilized to contain innocuous contents than *677 they are to contain contraband, in sharp contrast to glassine envelopes which have "come to be accepted as the telltale sign of heroin” (People v Corrado, 22 NY2d 308, 313). Even in the case of glassine envelopes, the court has held that "the mere passing of a glassine envelope in a neighborhood in which narcotics were known to be present, unsupplemented by any additional relevant behavior or circumstances found to exist, was insufficient to raise the level of inference from suspicion to probable cause (cf. People v Russell, 34 NY2d 261, 264; People v Brown, 32 NY2d 172, 174)” (People v Oden, 36 NY2d 382, 385).
Although, in determining whether probable cause exists for a narcotics transaction arrest, the factor that the observation took place in a drug saturated area is relevant (People v Oden, supra, p 385), it cannot render valid an arrest that is based on observation of a sketchy pattern of behavior which is at most equivocal and suspicious and may be said to be susceptible of various innocent interpretations (People v Davis, 36 NY2d 280, 282; People v Russell, 34 NY2d 261, 264; People v Brown, 24 NY2d 421, 423-424; People v Corrado, supra, p 311).
Although my research has revealed no reported cases dealing with the significance to be imputed to the sniffing of manila envelopes which allegedly contain PCP, the cases in the general area of probable cause are instructive as to weight which should be applied to the officer’s testimony in this regard.
For example, probable cause to arrest was found to be absent where all that the officer observed, albeit in a known narcotics location, was a man passing a glassine envelope, of unknown content, to a woman, who took a quick look at it and tightly clutched it (People v Oden, supra). Similarly, probable cause was lacking where an officer in a narcotics prone site observed the defendant in the company of a suspected drug addict, then saw the latter walk away from the defendant, enter a building, return to the defendant and a movement of hands. The testimony of the officer, based on his experience, that most persons engaged in selling drugs in the area usually stored their supply at some spot or had a confederate carry it, was held insufficient to uphold the arrest (People v Brown, supra). Further, probable cause was missing where an officer in a heavy narcotics area observed upon the dashboard of the defendant’s automobile 43 empty glassine envelopes and a 10 dollar bill folded to make a cup-like container of the identical *678 type used to transfer narcotics in previous arrests the officer had made (People v Bryant, 37 NY2d 208).
Even where money has been seen to exchange hands in return for the receipt of a manila envelope or a tinfoil packet, probable cause to arrest for a narcotics transaction has been held to be wanting.
In People v Lebron (48 AD2d 800), a police officer, employing binoculars, observed the defendant 200 feet away handing money to another from whom he received in return a small manila envelope. The defendant drove away. The car was then stopped by the officer, who proceeded to arrest and to search the defendant on the basis of this observation. In holding the arrest and search to have been made without probable cause, the court found that the activity observed was insufficient even to justify the stopping of the automobile. Similarly, in People v Maldonado (59 AD2d 692), a police officer, aided by binoculars, observed the defendant transfer pieces of tinfoil to the driver of a car in return for which he received pieces of green paper. In finding that there was no probable cause for the arrest of the defendant, the court, relying on Corrado, noted that, unlike glassine envelopes, there was no authority for the proposition that tinfoil packages are accepted as the telltale sign of contraband.
The foregoing review of judicial holdings concerning narcotics arrests based on observations of purported drug transactions has led me to the determination that Detective Jirak lacked probable cause to arrest the defendant for any crime. As I have previously noted, the fact that the observations took place in a known narcotics locale, although relevant, cannot validate an arrest for conduct that is readily susceptible of innocent interpretations. Although there was testimony that sniffing is commonly associated with POP sales, the person who in fact was observed to sniff the envelope took no steps to consummate a sale, but instead returned it to the defendant. Obviously, the criminal connotation Detective Jirak attached to the sniffing, which is ordinarily considered a mundane sensory exercise, cannot vicariously be attributed to the second individual who approached the defendant and ultimately walked away with the envelope without either sniffing or paying for it.
Furthermore, I am of the opinion that even if the defendant had been observed to pass a manila envelope to another, who sniffed it and then gave the defendant currency in exchange, *679 the People would be hard pressed to demonstrate that probable cause to arrest existed if only one such complete transaction was observed, without more, rather than a recurrent pattern of behavior (see People v Lebron, supra; People v Maldonado, supra). It seems to me that observations by experienced officers of repeated exchanges of manila envelopes for currency, in an area of high narcotics sales, accompanied by the telltale sign of sniffing, would raise the level of suspicion to one of probable cause to arrest (cf. People v Meyers, 38 AD2d 484). However, the question of the existence of probable cause in such a hypothetical set of circumstances will have to await a future determination.
In regard to the issue of whether probable cause existed, based on the facts and circumstances known to and observed by Detective Jirak in the case at bar, I find it did not. This set of facts and circumstances was no more than equivocal and suspicious and was insufficient to raise the level of inference from suspicion to probable cause (see People v Bryant, 37 NY2d 208, supra; People v Oden, 36 NY2d 382, supra; People v Russell, 34 NY2d 261, supra; People v Brown, 24 NY2d 421, supra).
The arrest of the defendant having been found to have been made without probable cause, it follows that the fruit of the search made incident to this invalid arrest must be suppressed.
Based on the foregoing reasons, the defendant’s motion to suppress the four manila envelopes containing PCP seized from his person is granted.