455 So.2d 363 (1984)
P.L.R., a Child, Petitioner,
v.
STATE of Florida, Respondent.
No. 64264.
Supreme Court of Florida.
July 19, 1984.
Rehearing Denied October 4, 1984.
Richard L. Jorandby, Public Defender, and Anthony Calvello, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for petitioner.
Jim Smith, Atty. Gen., and Richard G. Bartmon, Asst. Atty. Gen., West Palm Beach, for respondent.
*364 OVERTON, Justice.
This is a petition to review a decision of the Fourth District Court of Appeal reported as In the Interest of P.L.R., 435 So.2d 850 (Fla. 4th DCA 1983), in which the district court certified that its decision was in direct conflict with Thompson v. State, 405 So.2d 501 (Fla. 2d DCA 1981); Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978); and Harris v. State, 352 So.2d 1269 (Fla. 2d DCA 1977). We have jurisdiction, article V, section 3(b)(4), Florida Constitution.
The question presented concerns the propriety of a search and seizure and requires us to determine whether the observation of a manila envelope, of a type usually used for marijuana transactions, in the pocket of a juvenile at a known drug-transaction site provides sufficient probable cause to arrest the juvenile and conduct a search incident to that arrest. The district court found that there was sufficient probable cause. We agree. In so holding, we do not disapprove Thompson, Carr, or Harris because we find the facts and circumstances of those cases to be distinguishable.
The record in this case reflects the following. There was an unrelated drug arrest in an area of Pompano Beach known by law enforcement officials as a narcotic and marijuana trafficking site. The petitioner was with a group of youths who approached one of the arresting officers to ask about the arrest. The officer noticed that one of petitioner's sweatshirt pockets was bulging open to reveal a small manila envelope. The officer removed the envelope from the boy's sweatshirt, detected the smell of marijuana, and opened the envelope. Upon finding a "green vegetable matter" in the envelope that appeared to be marijuana, the officer placed the petitioner under formal arrest. Petitioner was then taken to the police station and, during a subsequent search, a clear baggie was found in his sock. Initial tests performed on the contents of both the envelope and the baggie were positive for marijuana. A forensic chemist's subsequent analysis, however, indicated that only the baggie contained marijuana.
The arresting officer testified at trial that he had seen petitioner in the drug-trafficking area before. The officer also testified that the kind of envelope taken from petitioner's pocket was "of the type commonly used in that area ... [for] what they call a nickel bag of marijuana... . This is, in fact, the only use I've ever seen these envelopes put to." He further testified that he had seen these envelopes used as nickel bags in excess of one hundred times and that ninety percent of the envelopes he had seen were in this particular area.
The trial court denied petitioner's motion to suppress the marijuana on the grounds of an illegal arrest and search, found the petitioner guilty of possession of marijuana, and adjudicated him delinquent.
The district court affirmed the trial court's determination that there had been a valid arrest and search. The court held that "the observance of a container known to police officers to frequently contain marijuana, when considered together with certain other circumstances, is sufficient to constitute probable cause to conclude that the envelope does contain marijuana." 435 So.2d at 852. The district court concluded that the initial search was incident to a lawful arrest and that the subsequent seizure of the baggie was valid.
The cases cited for conflict have similar, but not identical, controlling facts. In Thompson, an officer was called to a lounge by the lounge bouncer. The bouncer advised the officer that, two nights before, the defendant had been involved in an altercation with a customer who had reported to the bouncer that the defendant was carrying a gun in a shaving case. The bouncer was concerned because the defendant had come back to the bar with a small shaving case. As the officer and the bouncer talked, the defendant left the bar. The officer followed him outside and asked him for identification. The defendant replied that it was in his case which he placed on the hood of an automobile. The officer felt the outside of the case and, when he did not detect the presence of a weapon, allowed the defendant to put his hand inside *365 to retrieve the identification. As the defendant took his billfold from the case, a small brown manila envelope fell onto the hood of the car and then onto the ground. The officer picked it up, opened it, and found marijuana inside. A subsequent search of the shaving case also revealed cocaine. The issue was whether the officer had a right to look into the manila envelope which fell out of the shaving case. The district court determined that the issue involved probable cause and, since the officer "did not say that before he opened the envelope he believed that it contained marijuana, nor did he articulate any facts upon which he could have predicated such a belief," 405 So.2d at 503, the circumstances did not establish probable cause. The district court concluded, therefore, that the trial court should have granted the defendant's motion to suppress.
In Carr, the district court reversed a search and seizure as being invalid under the plain view exception. The defendant in Carr was questioned regarding his presence in a residential area. The defendant was outside his vehicle, having given proper identification as requested by the officer. The officer shined his flashlight into the vehicle "to check the interior." He observed two handrolled cigarettes and proceeded to enter the vehicle to seize them. The officer testified that he "knew" that they were marijuana cigarettes because they were unevenly rolled and twisted at the end. The evidence reflected, however, that the officer could not actually see any marijuana. The district court rejected the contention that the plain view exception should apply because "there was no contraband in plain view, merely two cigarettes." 353 So.2d at 959.
In Harris, the Second District rejected a finding of probable cause where the officer had approached the defendant after observing him put a rolled-up plastic bag in his pocket. The officer got out of the patrol car, pulled the plastic bag from appellant's pocket, and arrested him for possession of marijuana although he did not see what the plastic bag contained until he removed it. There was no question that the initial search was not incident to a lawful arrest. The court held that the officer had, at most, a mere suspicion that the bag contained marijuana and that mere suspicion alone did not support a finding of probable cause.
The Second District distinguishes these three decisions from its decision in State v. Redding, 362 So.2d 170 (Fla. 2d DCA 1978), which approved a warrantless seizure of small tinfoil packets found to contain phencyclidine. In Redding, the officers were investigating a citizen's complaint that a nude male was running around a car parked on the street. When the officers arrived, they found the defendant lying fully exposed on the front seat of the car. At this point, the officers clearly had probable cause to arrest the defendant for indecent exposure. When the officers ordered the defendant out of the car, the defendant opened the door and an interior light came on. The officers then sighted several small, flat, tinfoil packets inside the defendant's shoes which were placed on the back seat of the car. The officer testified that, based on his long experience as an undercover officer, he believed that the packets contained either heroin or cocaine. He stated that he knew narcotics were customarily carried in this type of container. The court, in Redding, distinguished the decision in Carr on the facts, finding the differences between handrolled cigarettes and tinfoil packets to be dispositive.
In the instant case, the district court relied upon this Court's decision in Albo v. State, 379 So.2d 648 (Fla. 1980), where we held that an officer's warrantless seizure of marijuana from a motor home was based upon probable cause. The officers in Albo had approached the motor home after observing the driver commit several traffic infractions. Inside the motor home were thirty-five to forty square bales wrapped in black plastic and burlap. We held that "[g]iven his experience [as a narcotics investigator] plus the defendant's failure to produce the vehicle's registration and the fact that the rear end of the motor home looked weighted down, the circumstances *366 support [the officer's] determination that the bales were marijuana." 379 So.2d at 650. We determined that these facts established sufficient probable cause for the officer to believe that a criminal offense was being committed.
We find, as did the district court, that the situation presented in the instant case is more like Redding and Albo than Thompson, Carr, and Harris. We agree with the state that the totality of the circumstances in the Thompson, Carr, Harris trilogy failed to give rise to probable cause prior to the searches and that there is a distinction between those cases and the present case. Specifically, in the instant case, the officer was at a narcotics transaction site, making a narcotics arrest, when he observed the envelope in the defendant's pocket. He testified that the only thing he had ever seen these envelopes used for at this location was narcotics transactions. We recognize that this is a fine line but we distinguish rather than disapprove Thompson, Carr, and Harris, primarily on the basis that there was no evidence that the searches and seizures in those cases occurred at narcotics-transaction sites where the type of container seized was utilized as a principal means to convey narcotics.
We find that the officers in the instant case had probable cause to make the arrest. The subsequent search incident to that arrest was, therefore, valid. We approve the decision of the district court in the instant case and distinguish Thompson, Carr, and Harris.
It is so ordered.
BOYD, C.J., and ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., dissents with an opinion.
ADKINS, Justice, dissenting.
I dissent.
The critical question in this case is whether there was probable cause for the officer to make an arrest so that there could be an incident search. The majority says that the officer was at a narcotics transaction site, making a narcotics arrest, when he observed the manila envelope in defendant's pocket. The officer testified that the only thing he had ever seen these envelopes used for at this location was narcotics transactions. This does not raise his suspicion to the level of probable cause.
In Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978), the court held that a policeman does not have the right to seize a hand-rolled cigarette without a warrant simply because it is suspected that it contains marijuana. Certainly a hand-rolled cigarette is more apt to contain marijuana than a manila envelope.
In Harris v. State, 352 So.2d 1269 (Fla. 2d DCA 1977), the officer observed defendant and companion in the area of a highway ramp. As a vehicle approached, the officer suspected that defendant was about to hitchhike. He was seen carrying a brown paper sack. As the officer approached, the defendant was observed putting a rolled up plastic bag in his pocket and his companion left. The officer suspected the plastic bag contained marijuana. He got out of his patrol car, pulled the plastic bag from the defendant's pocket, and arrested him for possession of marijuana. In reversing the conviction, the court said:
The fact that the officer knew that marijuana was commonly carried in plastic bags gave rise to, at most, a mere suspicion that the bag appellant was seen putting into his pocket contained marijuana.
.....
Thus, the marijuana found in appellant's pocket as a result of illegal search should be suppressed. The marijuana found in the brown paper sack and the marijuana received at the police station, obtained as a result of an illegal arrest, is also inadmissible. See State v. Lundy, 334 So.2d 671 (Fla. 4th DCA 1976).
Id. at 1270 (emphasis added).
The search was held illegal in Thompson v. State, 405 So.2d 501 (Fla. 2d DCA 1981). The majority opinion emphasizes the fact *367 that the officer in Thompson did not say, before opening the envelope, he believed that it contained marijuana. The majority opinion holds that the search in the instant case was lawful because the officer testified that the only thing he had ever seen these manila envelopes used for at this location was narcotics transactions. Discussing manila envelopes, the court in Thompson v. State said:

[I]t cannot be said that most brown manila envelopes contain marijuana. There could have been any number of items in the envelope other than marijuana which appellant would wish to keep private. Legally, the conduct of appellant in trying to hide the envelope was no different tha[n] if he had simply told the officer that he did not want him to look into it without a search warrant.

The issue is still probable cause.
405 So.2d at 503 (emphasis added).
The correct principle is followed in People v. Corrado, 22 N.Y.2d 308, 239 N.E.2d 526, 292 N.Y.S.2d 648 (1968). In this case the police observed four opaque manila envelopes being passed from one individual to another in a car. The court held that this did not constitute probable cause to believe that a marijuana transaction had taken place. The police were present at the location as a result of an anonymous tip that a sale of marijuana would occur at that time and place. They observed a car drive up carrying three young people. One of them emerged from the car, walked over to another vehicle, was seen to bend down and then returned to the first car. He handed four manila envelopes to the occupants of the first car and walked away. The police moved in and arrested the two men. Inspection of the manila envelopes revealed marijuana. To justify the arrest, one of the arresting officers testified that he had extensive narcotic experience and training and small quantities of loose marijuana were invariably packaged in such brown manila envelopes. In holding the search unlawful, the court said:
[T]he envelopes could have contained any number of contraband items. This is in sharp contrast to the translucent envelope which has come to be accepted as the telltale sign of heroin. Still, even in the case of the glassine envelope it has never been held that the mere passing of such an envelope establishes probable cause. We conclude, therefore, that the testimony concerning the use of these common envelopes for marijuana does not raise the level of inference from suspicion to probable cause.
In reaching our conclusion, we have not retreated in any manner from our prior decisions that a police officer is entitled to draw on his whole knowledge and experience as a criminal investigation officer. Thus, where a layman would see absolutely nothing suspicious about the envelopes and the events preceding the arrests, the officer was surely entitled to use his expertise to the contrary. It does not follow, however that the officer is entitled to draw the inference of criminality when others, possessed of the same special knowledge or expertise, would not (see Henry v. United States, 361 U.S. 98 102, 80 S.Ct. 168 [171, 4 L.Ed.2d 134]; Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302 [1310] 93 L.Ed. 1879).
22 N.Y.2d at 313-14, 239 N.E.2d at 529, 292 N.Y.S.2d at 652 (citations omitted) (footnote omitted).
The majority opinion pays lip service to Thompson, Carr, and Harris and attempts to draw a distinction between this case and those when, in fact, there are no distinctions. There was no probable cause for the officer to remove the manila envelope from the pocket of the defendant.
After the envelope was removed there was no probable cause to authorize the officer to open the manila envelope. In Mancini v. State, 448 So.2d 573 (Fla. 1st DCA 1984), a reliable informant notified the officer that defendant, within an hour, would be picking up a package of cocaine from the federal express office. The officer set up a surveillance of defendant who *368 was observed speeding to the federal express office in his automobile. Shortly thereafter he was seen exiting the office with a federal express package, entering his automobile and driving away. The officer stopped the defendant's automobile and advised him that he was under investigation for trafficking in cocaine and then proceeded to search the automobile. After removing the federal express package, the officer opened it and discovered a substance which later proved to be cocaine. The court held that defendant was entitled to an order granting his motion to suppress directed to the contraband found in the federal express package. The court said:
With respect to the cocaine found in the Federal Express package, the state urges that United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), is supportive of the trial court's denial of the defendant's motion. The state's reliance on Ross, however, is misplaced. Although the officers clearly had probable cause to believe that the defendant was in the process of transporting cocaine in his automobile at the time the officers stopped him, it is equally clear that the probable cause was limited to the Federal Express package as contrasted with the automobile generally. Under these circumstances, the Supreme Court has interpreted the Fourth Amendment as requiring the officers to obtain a search warrant authorizing the opening and searching of the container. Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In Ross the court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere therein may conduct a warrantless search of the vehicle and may open any containers which may contain the contraband. Significantly, however, the court was careful to point out the distinction between the situation where, as in Ross, the probable cause information was that the contraband was somewhere within the automobile and the situation, as in Sanders, where probable cause was limited to a container within the automobile.
The officer may have had a right to stop the defendant for questioning, but under the reasoning in Mancini as well as Thompson, the officer had no probable cause to open the envelope.
We cannot ask a juvenile to respect the law when the courts fail to respect the constitutional rights of people. Convicting a defendant by disregarding his constitutional rights is equivalent to a "legal lynching" without benefit of white hoods and robes.
In my opinion the decision of the district court of appeal should be quashed.