ADKINS, Justice,
dissenting.
I dissent.
The critical question in this case is whether there was probable cause for the officer to make an arrest so that there could be an incident search. The majority says that the officer was at a narcotics transaction site, making a narcotics arrest, when he observed the manila envelope in defendant’s pocket. The officer testified that the only thing he had ever seen these envelopes used for at this location was narcotics transactions. This does not raise his suspicion to the level of probable cause.
In Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978), the court held that a policeman does not have the right to seize a hand-rolled cigarette without a warrant simply because it is suspected that it contains marijuana. Certainly a hand-rolled cigarette is more apt to contain marijuana than a manila envelope.
In Harris v. State, 352 So.2d 1269 (Fla.2d DCA 1977), the officer observed defendant and companion in the area of a highway ramp. As a vehicle approached, the officer suspected that defendant was about to hitchhike. He was seen carrying a brown paper sack. As the officer approached, the defendant was observed putting a rolled up plastic bag in his pocket and his companion left. The officer suspected the plastic bag contained marijuana. He got out of his patrol car, pulled the plastic bag from the defendant's pocket, and arrested him for possession of marijuana. In reversing the conviction, the court said:

The fact that the officer knew that marijuana was commonly carried in plastic bags gave rise to, at most, a mere suspicion that the bag appellant was seen putting into his pocket contained marijuana.'

Thus, the marijuana found in appellant’s pocket as a result of illegal search should be suppressed. The marijuana found in the brown paper sack and the marijuana received at the police station, obtained as a result of an illegal arrest, is also inadmissible. See State v. Lundy, 334 So.2d 671 (Fla.4th DCA 1976).
Id. at 1270 (emphasis added).
The search was held illegal in Thompson v. State, 405 So.2d 501 (Fla.2d DCA 1981). The majority opinion emphasizes the fact *367 that the officer in Thompson did not say, before opening the envelope, he believed that it contained marijuana. The majority opinion holds that the search in the instant ease was lawful because the officer testified that the only thing he had ever seen these manila envelopes used for at this location was narcotics transactions. Discussing manila envelopes, the court in Thompson v. State said:
[I]t cannot be said that most brown manila envelopes contain marijuana. There could have been any number of items in the envelope other than marijuana which appellant would wish to keep private. Legally, the conduct of appellant in trying to hide the envelope was no different tha[n] if he had simply told the officer that he did not want him to look into it without a search warrant.

The issue is still probable cause.

405 So.2d at 503 (emphasis added).
The correct principle is followed in People v. Corrado, 22 N.Y.2d 308, 239 N.E.2d 526, 292 N.Y.S.2d 648 (1968). In this case the police observed four opaque manila envelopes being passed from one individual to another in a car. The court held that this did not constitute probable cause to believe that a marijuana transaction had taken place. The police were present at the location as a result of an anonymous tip that a sale of marijuana would occur at that time and place. They observed a car drive up carrying three young people. One of them emerged from the car, walked over to another vehicle, was seen to bend down and then returned to the first ear. He handed four manila envelopes to the occupants of the first car and walked away. The police moved in and arrested the two men. Inspection of the manila envelopes revealed marijuana. To justify the arrest, one of the arresting officers testified that he had extensive narcotic experience and training and small quantities of loose marijuana were invariably packaged in such brown manila envelopes. In holding the search unlawful, the court said:
[T]he envelopes could have contained any number of contraband items. This is in sharp contrast to the translucent envelope which has come to be accepted as the telltale sign of heroin. Still, even in the ease of the glassine envelope it has never been held that the mere passing of such an envelope establishes probable cause. We conclude, therefore, that the testimony concerning the use of these common envelopes for marijuana does not raise the level of inference from suspicion to probable cause.
In reaching our conclusion, we have not retreated in any manner from our prior decisions that a police officer is entitled to draw on his whole knowledge and experience as a criminal investigation officer. Thus, where a layman would see absolutely nothing suspicious about the envelopes and the events preceding the arrests, the officer was surely entitled to use his expertise to the contrary. It does not follow, however that the officer is entitled to draw the inference of criminality when others, possessed of the same special knowledge or expertise, would not (see Henry v. United States, 361 U.S. [98] 102, 80 S.Ct. 168 [171, 4 L.Ed.2d 134]; Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302 [1310] 93 L.Ed. 1879).
22 N.Y.2d at 313-14, 239 N.E.2d at 529, 292 N.Y.S.2d at 652 (citations omitted) (footnote omitted).
The majority opinion pays lip service to Thompson, Carr, and Harris and attempts to draw a distinction between this case and those when, in fact, there are no distinctions. There was no probable cause for the officer to remove the manila envelope from the pocket of the defendant.
After the envelope was removed there was no probable cause to authorize the officer to open the manila envelope. In Mancini v. State, 448 So.2d 573 (Fla. 1st DCA 1984), a reliable informant notified the officer that defendant, within an hour, would be picking up a package of cocaine from the federal express office. The officer set up a surveillance of defendant who *368 was observed speeding to the federal express office in his automobile. Shortly thereafter he was seen exiting the office with a federal express package, entering his automobile and driving away. The officer stopped the defendant’s automobile and advised him that he was under investigation for trafficking in cocaine and then proceeded to search the automobile. After removing the federal express package, the officer opened it and discovered a substance which later proved to be cocaine. The court held that defendant was entitled to an order granting his motion to suppress directed to the contraband found in the federal express package. The court said:
With respect to the cocaine found in the Federal Express package, the state urges that United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), is supportive of the trial court’s denial of the defendant’s motion. The state’s reliance on Ross, however, is misplaced. Although the officers clearly had probable cause to believe that the defendant was in the process of transporting cocaine in his automobile at the time the officers stopped him, it is equally clear that the probable cause was limited to the Federal Express package as contrasted with the automobile generally. Under these circumstances, the Supreme Court has interpreted the Fourth Amendment as requiring the officers to obtain a search warrant authorizing the opening and searching of the container. Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In Ross the court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere therein may conduct a warrantless search of the vehicle and may open any containers which may contain the contraband. Significantly, however, the court was careful to point out the distinction between the situation where, as in Ross, the probable cause information was that the contraband was somewhere within the automobile and the situation, as in Sanders, where probable cause was limited to a container within the automobile.
The officer may have had a right to stop the defendant for questioning, but under the reasoning in Mancini as well as Thompson, the officer had no probable cause to open the envelope.
We cannot ask a juvenile to respect the law when the courts fail to respect the constitutional rights of people. Convicting a defendant by disregarding his constitutional rights is equivalent to a “legal lynching” without benefit of white hoods and robes.
In my opinion the decision of the district court of appeal should be quashed.