THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RONALD HESTER, Appellant.

First Department, November 20, 1979

### APPEARANCES OF COUNSEL

*Elaine T. Stogel* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Sada Thomas Sweeney* of counsel *(Norman Barclay* with her on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

MARKEWICH, J.

Again, we come to the problem of the significance to be attached to one simple circumstance: the passage of glassine envelopes from one hand to another. A current line of cases (see *infra)* teaches that absent other solid evidentiary factors, this simple fact is insufficient as probable cause for arrest for criminal possession of a controlled substance. However, accepting the circumstances as set forth in the dissent we find the reasons stated by the suppression court for denial of the motion of defendant-appellant to suppress to be less than sufficient to justify the result reached. Indeed, as the dissent is read up to the citation of *People v Goss* (67 AD2d 876) one is impelled to a belief that its conclusion must logically be for reversal. It is a rude shock then to encounter this observation: "However, the totality of circumstances illustrated by the foregoing narration of facts as accepted by the hearing court on defendant's motion to suppress, mandates an affirmance herein." Unfortunately, that totality consists of only one solid fact—that officers observed three bundles of glassine envelopes handed by another person to defendant—and several factors, equivocal in nature, capable only of engendering suspicion, though sufficient to trigger further investigation. That further investigation never occurred and, under the law as it stands, no probable cause existed for the arrest immediately after the observation.

There follows a quotation for *People v Alexander* (37 NY2d 202, 203-204). However, that case provides a slender reed on which to lean because it has no application to the facts here found. Close examination of the text of that case reveals that the majority in the Court of Appeals found itself bound by the factual determination below of the circumstances of the arrest. A reading of the dissent indicates the nature of the factual finding which was considered binding; it was obvious that the defendant there had deliberately abandoned the contraband involved by throwing it to the ground when the officer approached. That arrest was not made until after discard and, therefore, abandonment of the contraband. This finding obviated any unlawful search issue. (See *Alexander, supra,* pp 204-205.)

Let us examine the circumstances here which provided, we are told, "probable cause," as described by the suppression court, quoted in one of the dissent's final paragraphs. They are

listed as observations "made in a high crime area, a high narcotics traffic area bolstered by testimony of furtive actions on the part of these defendants". Reference is made to "suspicious conduct," axiomatically a license only for officers to investigate further, but not probable cause; and to "looking up and down the street to determine whether they were being observed or not," which is equivocal conduct also not constituting probable cause. The fleeting factor of furtiveness is insufficient to lay a solid foundation for probable cause. In any event, a transaction conducted openly, though possibly fearfully, subject to observation on the public street, can scarcely be termed "furtive." In short, that conclusion which we familiarly call "probable cause" is arrived at here by a process of speculation. Let us compare this description with others.

"In *People v. Brown* (24 NY2d 421, 423), where the arrest was based on 'a high crime area, a suspected narcotic addict, a meeting, parting, return, and movement of hands', there was found to be a lack of probable cause. In *People v Corrado* (22 NY2d 308), there was a tip from an undercover policeman that marijuana would be present at a given time and place, defendants appeared in a car at said location at about said time, one of them left their car and walked to a second vehicle where he bent down for a few seconds and then returned to his companions in the first car where he was observed passing four opaque, manila envelopes to the driver. Despite these observations and testimony by a detective, experienced in narcotics, that he had never seen loose marijuana in small quantities passed or sold in envelopes other than in the type involved here, probable cause was found to be lacking" *(People v Oden,* 36 NY2d 382, 385-386).

"The People argue * * * that probable cause existed here because there was uncontradicted testimony by Detective Stoehr that, in his experience as an investigator assigned to the Narcotics Bureau, he had never seen loose marijuana in small quantities passed or sold in envelopes other than in the type involved here. This knowledge, it is claimed, justified the officer in drawing the inference that appellants probably had contraband in their possession.

"The argument is defective because the envelopes could have contained any number of noncontraband items. This is in sharp contrast to the translucent glassine envelope which has come to be accepted as the telltale sign of heroin. Still, even in the case of the glassine envelope it has never been held that

the mere passing of such an envelope establishes probable cause. We conclude, therefore, that the testimony concerning the use of these common envelopes for marijuana does not raise the level of inference from suspicion to probable cause" *(People v Corrado,* 22 NY2d 308, 312-313).

Thus, every factor listed by the suppression court is eliminated, leaving only the transfer of glassine envelopes. And, as to the glassine envelopes themselves, the only fruit of the police observations, they do not, by themselves, provide probable cause for arrest. On this point and in addition to *Corrado (supra),* see *People v Goss* (67 AD2d 876, *supra), People v Thomas* (62 AD2d 945), *People v Maldonado* (59 AD2d 692). There was no further investigation here to provide additional facts before the arrest.

It may be argued that, because there were three bundles of glassine envelopes, that circumstance alone would provide probable cause. But if the mere passing of one glassine envelope does not provide anything by way of probable cause (e.g., *People v Goss, supra),* neither do three bundles or three dozen bundles except as exacerbating factors after probable cause is established. One hundred times nothing still multiplies out to a product of nothing. The holding in *Corrado (supra)* applied to the circumstances here requires the conclusion we reach.

Accordingly, the judgment, Supreme Court, New York County (CROPPER, J.), rendered March 9, 1978, should be reversed, on the law, defendant-appellant's plea of guilty vacated, the motion to suppress (ALEXANDER, J.) granted, and the indictment dismissed.

FEIN, J. (concurring). I concur that there should be a reversal in the light of *People v Alexander* (37 NY2d 202) which I believe requires the conclusion that the mere passing of glassine envelopes is insufficient to establish probable cause.

In *Alexander* the majority stated (pp 203-204): "In addition to the officer's observation of 'a quantity' of glassine envelopes, a 'telltale sign of heroin' *(People v Corrado,* 22 NY2d 308, 313; see, also, *United States v Mont,* 306 F2d 412, 414, cert den 371 US 935; *United States v Moon,* 351 F2d 464, 465, cert den 383 US 929), it was found that the arresting officer was trained and experienced in narcotics police work *(People v Valentine,* 17 NY2d 128) and, *perhaps most important, that, prior to the arrest, the defendant dropped or threw the*

*envelopes, thereby evincing a consciousness of guilt upon seeing the approaching uniformed officer (People v Butterly,* 25 NY2d 159, 162-163)." (Emphasis supplied.) (See *People v Oden,* 36 NY2d 382, 385, 386; *People v Corrado,* 22 NY2d 308, 312, 313; *People v Goss,* 67 AD2d 876.)

LUPIANO, J. (dissenting). Officer Bellistri, trained and experienced in narcotics police work, together with fellow Officer James Wood, observed, from a post selected by them as affording adequate concealed surveillance advantage, defendant and his companion stop directly across the street from them in front of an unused school yard. After stopping, defendant and his companion looked up and down the street. The companion, one Jones, then took a bundle of glassine envelopes out of his pocket and handed it to the defendant who, while placing the bundle in his right pocket, continued to look up and down the street. Two further and similar exchanges of bundles of glassine envelopes followed successively. Officer Bellistri was cognizant of the fact that such envelopes are used to package heroin, and upon completion of the exchanges and as defendant and his companion were endeavoring to leave this area, Officer Bellistri arrested defendant while Officer Wood arrested Jones. In searching the defendant after his arrest, Bellistri found 31 glassine envelopes containing heroin and a small quantity of cocaine.

Of course, the mere passing of a glassine envelope, the contents of which might be suspected by the police to contain narcotics, does not establish probable cause to arrest (see *People v Goss,* 67 AD2d 876). However, the totality of circumstances illustrated by the foregoing narration of facts as accepted by the hearing court on defendant's motion to suppress, mandates an affirmance herein.

"In addition to the officer's observation of 'a quantity' of glassine envelopes, a 'telltale sign of heroin' *(People v Corrado,* 22 NY2d 308, 313; see, also, *United States v Mont,* 306 F2d 412, 414, cert den 371 US 935; *United States v Moon,* 351 F2d 464, 465, cert den 383 US 929), it was found that the arresting officer was trained and experienced in narcotics police work *(People v Valentine,* 17 NY2d 128)" *(People v Alexander,* 37 NY2d 202, 203-204).

In contrast to the mere passing of a glassine envelope, the police surveillance team observed the repeated passing of a

quantity of glassine envelopes, coupled with furtive actions*
on the part of defendant and his companion in an area known
for the high incidence of narcotics activity.

As aptly stated by the hearing court on defendant's motion
to suppress: "[I]n viewing the totality of the circumstances
* * * there was probable cause for the arrest. The observation
of the officers experienced in narcotics arrest made in a high
crime area, a high narcotics traffic area bolstered by testi-
mony of furtive actions on the part of these defendants set
forth in sufficient quantity those criteria that are to be ob-
served by the Court * * * The Court finds, as the fact * * *
that on the day in question these defendants were observed
engaging in suspicious conduct at a location then under
observation by Bellistri and Wood; that conduct being the
furtive exchange on three separate occasions within a matter
of seconds of items believed by the officer at that time to be
glassine envelopes containing heroin and in the process of the
exchange and immediately thereafter, looking up and down
the street to determine whether they were being observed or
not * * * a reasonable man making these observations would
have probable cause to believe that illegal conduct was then
and there afoot * * * [T]he totality of the circumstances
justified the officers pursuing, arresting and searching these
defendants and seizing the contraband."

In defining "probable cause," CPL 70.10 (subd 2) provides in
pertinent part: " 'Reasonable cause to believe that a person
has committed an offense' exists when evidence or information
which appears reliable discloses facts or circumstances which
are collectively of such weight and persuasiveness as to con-
vince a person of ordinary intelligence, judgment and experi-
ence that it is reasonably likely that such offense was commit-
ted and that such person committed it." Case law declares:
"Probable cause exists where 'the facts and circumstances
within their [the officers] knowledge and of which they had
reasonable trustworthy information [are] sufficient in them-
selves to warrant a man of reasonable caution in the belief
that' an offense has been or is being committed. *Carroll v.*

---

* The term "furtive" is used in the generic sense of stealth, i.e., a method of
procedure accompanied by efforts at concealment. The transactions engaged in by
defendant and his companion were accompanied by repeated glances up and down the
street, indicative to an experienced police officer employing reason and common sense
that defendant and his companion wished to assure themselves that they were
unobserved and that the transactions would remain known only to themselves, i.e., it
would be their "secret."

*United States,* 267 U. S. 132, 162." (See, also, *People v Oden,* 36 NY2d 382, 384.) It is self-evident that "[i]n dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, *not legal technicians,* act" *(Brinegar v United States, supra,* p 175).

The majority in isolating the factors that go into the probable cause mix have rejected each factor singly and thereby conclude that probable cause has not been demonstrated, driving the point "home" with the observation that "[o]ne hundred times nothing still multiplies out to a product of nothing." In rebuttal, I cite the statement of the nature of probable cause found in *United States v Davis* (458 F2d 819, 821): "The contours and salient principles of probable cause have been faithfully catalogued in a surfeit of decisional law. Probable cause exists when known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that an offense has been or is being committed * * * A significantly lower *quanta* of proof is required to establish probable cause than guilt * * * Probable cause does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine 'philosophical concept existing in a vacuum,' * * * but rather it requires a pragmatic analysis of 'everyday life on which reasonable and prudent men, not legal technicians, act' * * * It is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training * * * It is 'a plastic concept whose existence depends on the facts and circumstances of the particular case' * * * Because of the kaleidoscopic myriad that goes into the probable cause mix 'seldom does a decision in one case handily dispose of the next' * * * It is however the totality of these facts and circumstances which is the relevant consideration * * * Viewed singly these factors may not be dispositive, yet when viewed in unison the puzzle may fit." It should be sufficient to note that "[t]here is no war between the Constitution and common sense" *(Mapp v Ohio,* 367 US 643, 657).

Further, the objective standard embraced within "probable cause" considers as a factor, *inter alia,* the experience and expertise of the officer making the search or arrest.

"What constitutes 'probable cause' for searches and seizures

must be determined from the standpoint of the officer, with *his* skill and knowledge, rather than from the standpoint of an average citizen under similar circumstances" *(People v Symmonds,* 18 Ill App 3d 587, 596; see, also, *United States v Davis, supra).*

It should also be noted that the mere fact than an innocent explanation for the activity of the defendants herein may be imagined is not enough to defeat the probable cause showing when the "succession of superficially innocent events has proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one" *(United States v Martin,* 509 F2d 1211, 1213; *United States v Patterson,* 492 F2d 995, 997).

Accordingly, the judgment, Supreme Court, New York County (F. ALEXANDER, J., at suppression hearing; CROPPER, J., at plea and sentence), rendered March 9, 1978, convicting defendant, on his plea of guilty, of criminal possession of a controlled substance in the third degree (Penal Law, § 220.16), should be affirmed.

BIRNS, J. P., concurs with MARKEWICH, J.; FEIN, J., concurs in a separate opinion; LUPIANO and SULLIVAN, JJ., dissent in an opinion by LUPIANO, J.

Judgment, Supreme Court, New York County, rendered on March 9, 1978, reversed, on the law, defendant-appellant's plea of guilty vacated, the motion to suppress granted, and the indictment dismissed.