THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES J., Appellant.

First Department, March 20, 1980

### APPEARANCES OF COUNSEL

*Joseph Calluori* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Christina M. Campriello* of counsel *(Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

Sullivan, J.

At issue is the legality of a search predicated upon the transfer of a single glassine envelope, approximately one to one and one-quarter inches long by one-half to five-eighths of an inch wide, in circumstances which indicated to a police officer surveying the exchange that a sale of heroin had taken place. Certain uncontroverted facts were established at the suppression hearing.

On the afternoon of February 26, 1977, at approximately 1:30 P.M., Police Officers Gerrish and Evans stationed themselves on the second floor of an abandoned building at 300 West 128th Street and, using binoculars, began observing the intersection of West 128th Street and 8th Avenue and the adjacent sidewalks. This intersection is within the 32nd precinct, to which the officers were assigned.

During the seven years that he had been assigned to the 32nd precinct Officer Gerrish had made approximately 100 arrests for narcotics violations, at least 75 of which had involved heroin. Of the heroin arrests 30 to 40 had taken place at the intersection of 128th Street and 8th Avenue, and he had made 25 to 30 arrests on his personal observations of transactions between individuals previously unknown to him. In addition, Officer Gerrish had received training in the recognition and packaging of narcotics at the police academy.

Some 10 minutes after taking up his observation post, Gerrish began to focus his attention on defendant, who was part of a group congregated on the northeast corner of the intersection, approximately 75 to 100 feet away. Defendant was observed in brief conversations with passers-by who would approach, speak to him, and then walk away. While others in the group would come and go, defendant remained in the same location, on the corner, sometimes leaning against a building on 8th Avenue, at other times standing away from the building, but never farther than a few feet. The composition of the group changed throughout the period of observation, varying in size from as few as 3 or 4 to as many as 10 to 12.

At approximately 2:25 P.M. an unidentified male wearing an imitation leather coat approached defendant. Through his binoculars Gerrish observed defendant reach into the right hand pocket of a sweater he was wearing under his jacket and remove a white glassine envelope, which he passed to the male in the leather jacket. Gerrish did not see any exchange of money.

The officers immediately left their observation post. According to plan, Gerrish was to take defendant into custody while Evans, to whom Gerrish had furnished a description, was to apprehend the man in the leather jacket.[1] When Gerrish approached defendant, he immediately reached into defendant's right hand sweater pocket and removed several glassine envelopes. Gerrish informed defendant that he was under arrest and advised him of his *Miranda* rights. Additional glassine envelopes were recovered from defendant's left hand sweater pocket. Later, at the station house, defendant admitted possession of 16 glassine envelopes.[2] Subsequent analysis showed that the glassine envelopes contained heroin.

The suppression court found Officer Gerrish's testimony credible. Conceding that the mere passing of a glassine envelope in a neighborhood known for narcotics transactions is not a sufficient basis for an arrest, the court held that the facts and circumstances surrounding the transfer here were, nevertheless, sufficient to raise the level of inference from suspicion to probable cause. We agree.

Just four months ago, in *People v Hester* (71 AD2d 121) we held that a sidewalk transfer of three bundles of glassine envelopes in a high crime area, accompanied by furtive actions (looking up and down the street) on the part of both transferor and transferee, did not constitute probable cause. In so doing we reaffirmed the principle, long espoused by this court, and first enunciated, as dictum, by the Court of Appeals in *People v Corrado* (22 NY2d 308, 313), that the mere passing of a glassine envelope, the contents of which the police suspect might be narcotics, was insufficient to establish probable cause to arrest. (See *People v Goss,* 67 AD2d 876; *People v Thomas,* 62 AD2d 945; see, also, *People v Maldonado,* 59 AD2d 692.)

No especial formula exists by which to measure the reason-

---

1. Evans was unable to apprehend the second individual, who left the area in a gypsy cab.

2. Gerrish testified that he recovered 19 glassine envelopes.

ableness of a police officer's conclusions after he has observed what he perceives to be a drug transaction. In *People v Brown* (24 NY2d 421, 423) the Court of Appeals found a lack of probable cause where "[t]he observed activity on which the arrest was based [consisted of]: a high crime area, a suspected narcotic addict, a meeting, parting, return, and movement of hands." On the other hand, in *People v Smith* (21 NY2d 698, 700) the court upheld a seizure based upon police observations on two separate occasions, only three days apart, of a series of at least 10 callers each day, who had knocked on an apartment door, conversed briefly with the occupant, and eventually handed him money. In addition, in *People v Valentine* (17 NY2d 128), a search was sustained which followed police observations of the defendant who, standing on a street corner, was approached by others and handed money in bill form on at least six occasions. In *People v Cohen* (23 NY2d 674), the officer's suspicions based on his observations were buttressed when he overheard conversations between the suspects. And, in *People v Quinones* (33 NY2d 811), the officer was close enough to the transaction to recognize the contents of the envelopes being transferred, while in *People v Rowell* (27 NY2d 691), he was in such close proximity that he was able to observe a quantity of glassine envelopes on the floor of the automobile.

In *People v Oden* (36 NY2d 382) the Court of Appeals had occasion to reassert the principle that the mere passing of a glassine envelope does not provide probable cause in affirming the suppression of narcotics seized by a police officer who, while on a stakeout in a neighborhood having a high crime rate, happened to notice the passing of a glassine envelope, the contents of which he could not see. The court noted (p 385) that the hearing court had failed to "credit or accept the proof regarding the [defendant's] quick look or the ambiguous testimony concerning [the] closing of her hand tightly or that the envelope appeared white—all part of the fact-finding process." It recognized its lack of power to review questions of fact, citing, *inter alia, People v Leonti* (18 NY2d 384, 390) and Cohen and Karger (Powers of New York Court of Appeals [rev ed], § 198, p 742). The court explicitly left open the issue of whether, "on different inferences or dissimilar credibility considerations", other findings of fact indicative of "additional bases for probable cause", would have been sufficient to justify the police actions. *(People v Oden, supra,* at p 386.)

Shortly thereafter, in *People v Alexander* (37 NY2d 202, 203), the Court of Appeals sustained a seizure of heroin upon a hearing court's finding that the arresting officer " 'saw what looked like plastic envelopes—what they call glassine envelopes, in the manner in which he described it in this courtroom, and that seeing that at a moment's notice, he ran out of the car, and as he got there—the defendant now realizing that there was a [uniformed] officer coming—attempted to get rid of it in any way he did, and he dropped it or threw it— anyway you want to describe the manner'." The court emphasized (p 203) the officer's observation of a quantity of glassine envelopes, the "telltale sign of heroin", citing *People v Corrado* (22 NY2d 308, 313); the officer's training and experience in narcotics, citing *People v Valentine* (17 NY2d 128, *supra);* and the suspect disgorging himself of the glassine envelopes, thus evincing a consciousness of guilt, relying on *People v Butterly* (25 NY2d 159, 162-163).

The quantum of proof for probable cause is significantly less than is required to establish guilt. "Probable cause exists when known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that an offense has been or is being committed." *(United States v Davis,* 458 F2d 819, 821.) "In dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *(Brinegar v United States,* 338 US 160, 175.) "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." *(United States v Ventresca,* 380 US 102, 108.)

The arrest here was made by a police officer, experienced and conversant with the refinements of street-level drug trafficking, based upon his observations of defendant's behavior over a 45-minute period at a location where the officer had previously, in a seven-year period, made 30 to 40 heroin arrests, an area so notorious for drug trafficking that it had been designated a target of "Operation Drug", a special effort of the police department to clear specified areas of narcotics traffic.

In our view, these observations were sufficient, "from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training" *(United States v Davis,* 458 F2d 819, 821, *supra),*

to provide reasonable grounds for the belief that defendant was selling heroin. For the entire time he was under surveillance, on a winter afternoon, defendant remained in one spot, waiting to be appproached by others, seemingly engaged in brief conversations, while the crowd of which he appeared to be a part was in a constant state of flux. To Officer Gerrish, defendant's behavior warranted scrutiny. He was, in Officer Gerrish's words, a "known denominator of the crowd." Ultimately, Gerrish's investigative instincts were confirmed. He saw defendant hand to one of those who approached him a glassine envelope, "the telltale sign of heroin" *(People v Corrado,* 22 NY2d 308, 313, *supra).* Officer Gerrish now had reason to believe what he already had cause to suspect, namely, that defendant was a street-corner drug seller. While a police officer's knowledge is hardly license to transmute mere suspicion into probable cause (see *People v Maldonado,* 59 AD2d 692, *supra),* he "is entitled to draw on his whole knowledge and experience as a criminal investigation officer * * * [W]here a layman would see absolutely nothing suspicious about the envelopes and the events preceding the arrests, the officer was surely entitled to use his expertise to the contrary." *(People v Corrado,* 22 NY2d 308, 313-314, *supra.)*[3]

This case presents a factual situation distinguishable from our earlier holdings cited by defendant. In *People v Maldonado* (59 AD2d 692, *supra),* we rejected a finding that a tinfoil packet could be the basis of probable cause since it is not recognized as the telltale sign of narcotics. In *People v Thomas* (62 AD2d 945, *supra),* probable cause was sought to be justified solely on the basis of a transfer of "a white object" which had been removed from a paper bag carried in the waistband. In *People v Goss* (67 AD2d 876, *supra),* the police officer observed only the transfer of a "white envelope" after a brief observation. In *People v Hester* (71 AD2d 121, *supra),* aside from furtive glances up and down the street, only the naked exchange of the glassine envelopes had occurred. Nor do these cases contain any evidence that the specific location of the transaction was the scene of heavy or unusual narcotic trafficking. Instead, each transaction appeared to be an isolated street encounter, the criminality of which was not sufficiently overt to warrant police intrusion.

Finally, in any assessment of the reasonableness of a police

---

3. We do not concede, however, that even the most casual layman's suspicions would not also be aroused by the transfer of glassine envelopes.

officer's on-the-scene determination that a crime has probably been committed, the components of probable cause should be weighed, not in isolation from each other, but, rather, in their totality. Individually these factors may be innocent in nature or, at least, equivocal. Yet, as a composite they may be sufficient to justify an officer's reasonable belief, based on his skill and experience, that a crime has been or is being committed. At such a juncture the police officer is empowered to act. After all, "there is no war between the Constitution and common sense." (*Mapp v Ohio,* 367 US 643, 657.)

Accordingly, the judgment, Supreme Court, New York County (FITZER, J.), rendered December 13, 1977, adjudicating defendant a youthful offender upon his guilty plea of criminal possession of a controlled substance in the fifth degree and sentencing him to probation, should be affirmed.

BLOOM, J. (dissenting). So far as is apparent to me, this case does not differ in essential detail from *People v Hester* (71 AD2d 121, 122), where this court held that the mere transfer of glassine envelopes absent other "solid evidentiary factors * * * is insufficient as probable cause for arrest for criminal possession of a controlled substance". Accordingly, we reversed the denial of a motion to suppress, granted the motion as a matter of law and dismissed the indictment. In *People v McRay* (— AD2d —, appeal No. 7420, decided Feb. 1, 1980), we followed *Hester.*

As a member of the *McRay* Bench, I concurred in the result. However, because of personal misgivings as to the soundness of the *Hester* rule, I did so only under constraint of that case. Because I feel myself bound by the results reached in *Hester* and *McRay,* I would, under constraint of those cases, reverse the judgment of Criminal Term, vacate the guilty plea, grant the motion to suppress and dismiss the indictment.

SANDLER and CARRO, JJ., concur with SULLIVAN, J.; BIRNS, J. P., and BLOOM, J., dissent in an opinion by BLOOM, J.

Judgment, Supreme Court, New York County, rendered on December 13, 1977, affirmed.