THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALVARADO BRANCH, Appellant.

First Department, October 19, 1976

*David A. Lewis* of counsel *(William E. Hellerstein* and *William J. Gallagher,* attorneys), for appellant.

*Jane Deutscher* of counsel *(Robert M. Morgenthau, District Attorney),* for respondent.

STEVENS, P. J. Defendant, who is currently free on parole,

appeals from a judgment rendered February 14, 1974, in Supreme Court, New York County (SCHWARTZ, J.), which convicted him upon a jury verdict of possession of a weapon as a felony and sentenced him to a three-year indeterminate term of imprisonment.

At the hearing held on defendant's motion to suppress the pistol and ammunition seized at the time of his arrest, Housing Authority Detective Robert Meyers testified that on April 26, 1973, at approximately 3:30 P.M. he and his partner were sitting in a parked car in the rear of 235 West 63rd Street, a building in the Amsterdam Housing Development. The two officers, who were assigned to the Narcotics Squad, were there because anonymous communications had been received by their department indicating a narcotics problem or narcotics traffic in and out of the building. From a distance of 20 to 25 feet, they observed another male walk up to defendant and give him folded money in bill form, which later proved to be one dollar. At that point, the two officers got out of the car and appproached the two men at a fast walk or with a "speedy motion", their shields but not their guns in their hands, and Detective Meyers said, "Police". Defendant looked in their direction and, as he unfolded the dollar bill, blew a white powder into the air either toward or just about in their faces. Defendant and the two officers laughed. Detective Meyers then said, "You have just beaten me by blowing the powder that you had, in the dollar bill, in the air." "Do you have any more narcotics on your person, because the one and one [which the officer testified meant cocaine] you just blew away on me, you beat me." Defendant responded, "I have a little smoke" and, according to the detective, handed Meyers two bags of marijuana. Defendant was then placed under arrest and advised of his constitutional rights. Subsequently, as he was being taken to an office for a thorough search and in response to a question as to whether he had more narcotics in his possession, defendant removed an unloaded revolver from his waistband and gave it to Meyers. Later on, he removed two shells from his shirt pocket and also gave them to Meyers. On cross-examination Meyers acknowledged that none of the anonymous letters mentioned this defendant and that prior to the date and time of the incident he had never seen or known defendant or had any information about him.

On appeal, defendant contends, *inter alia,* that the officer's observation standing alone was an insufficient basis to justify

seizure of defendant; that the evidence of guilt was insufficient; and that the court erred in its instructions to the jury.

Focusing first on whether the conduct of the officers was reasonable, in our view it was not. The mere observation at 3:30 in the afternoon of one person approaching another and handing such person a folded bill without hearing any conversation or observing any conduct reasonably indicative of a violation of the law is not in and of itself sufficient to justify the seizure of the person or restraint of such person's liberty or freedom of movement (see *People v Cantor,* 36 NY2d 106). The transaction observed here did not entail any "telltale sign" of narcotics or other criminal activity (see *People v Corrado,* 22 NY2d 308, 313), nor did the mere exchange of currency constitute sufficient justification for the police action. (See *People v Diaz,* 50 AD2d 526.) When Meyers and his partner approached defendant with a speedy motion, badges in hand and announced "Police", it can hardly be doubted that defendant then remained in his position as a submission to authority. With the two officers converging upon him he was significantly deprived of his freedom of movement and restricted in his actions, although no formal declaration of arrest had been made. At that point there was a seizure. The fact that defendant thereafter handed over two bags of marijuana, for which he was formally arrested, and subsequently handed over a revolver and shells will not suffice to endow the original seizure with the mantle of legality.

In *People v De Bour* (40 NY2d 210, 218) the Court of Appeals observed that the police should be given wide latitude to approach individuals and request information and that such inquiry need not rest on any indication of criminal activity on the part of the individual questioned, if there is some articulable reason sufficient to justify the action taken (p 213). However, *De Bour* is readily distinguished on its facts and the principles set forth must be considered against that background and applied accordingly.

There, two police officers, walking their beat on an empty but well-illuminated street shortly after midnight in an area with a high incidence of narcotics crimes, observed De Bour walking towards them on the same side of the street. When he was within 30 or 40 feet of the officers, he crossed the street and the officers did likewise. When De Bour reached them, they asked what he was doing in the neighborhood. His nervous response that he had just parked his car and was

going to a friend's house, led them to ask for identification. De Bour had none. The officer, noticing a slight waist-high bulge in De Bour's jacket, asked him to unzipper his coat. A loaded gun was revealed, removed from his possession and De Bour was placed under arrest. The Court of Appeals found that De Bour was merely approached and questioned by two uniformed officers whose conduct bespoke no violent or forcible apprehension, that therefore he was not seized as were the defendants in *People v Cantor (supra)*, and *People v Ingle* (36 NY2d 413) and indeed, that the patrolmen had no articulable reason to forcibly seize or arrest De Bour *(People v De Bour, supra,* p 217). The court concluded, however, that the conduct of the officers was reasonable under the attendant circumstances, that they were authorized to make the brief limited inquiry which they did, and that the subsequent intrusion was reasonably limited in scope and intensity.

In the present case, the police approach ostensibly to make inquiry, was underscored by an exhibition of badges, an announcement "Police", and a rapidity of movement. The sole basis for such action was the passing of a folded bill at 3:30 P.M., assuming the officers could so accurately characterize it from a distance. The action observed was as susceptible of innocent as of criminal activity *(People v Davis,* 36 NY2d 280), and the intrusion could hardly be termed minimal.

Defendant also urges that the court erred in its charge with respect to possession of the weapon. He acknowledges a correct charge under the indictment for possession of an operable firearm and ammunition to discharge it, a class D felony (former Penal Law, § 265.05, subd 2 [L 1965, ch 1030]). He asserts correctly, however, that the court erred when it went further and charged a second theory that if the jury found the weapon not capable of being discharged but found that "the instrument could be discharged with slight preparation or reasonable preparation" and it could ·be made effective, defendant was guilty of possession of a dangerous weapon. The court further charged the jury as to such possession "with intent to use the same unlawfully against another", a crime not charged in the indictment. The People counter by noting that no objection was made to the charge and that no issue of law is preserved for review (CPL 470.05, subd 2). Although no objection was made, this court is not without power to reverse in the interests of justice.

Accordingly, for reasons heretofore stated, the judgment

appealed from should be reversed, on the law, and the indictment dismissed.

MARKEWICH, LUPIANO and LYNCH, JJ., concur with STEVENS, P. J.; SILVERMAN, J., concurs in result only.

Judgment, Supreme Court, New York County, rendered on February 14, 1974, unanimously reversed, on the law, and the indictment dismissed.