OPINION OF THE COURT
Richard T. Andrias, J.
The defendants, alleged to have been acting in concert, were originally charged with menacing (Penal Law, § 120.15) and subdivision (2) of section 265.01 of the Penal Law, criminal possession of a weapon in the fourth degree (possession of a “dangerous or deadly instrument or weapon with intent to use the same unlawfully against another”). However, upon the receipt of the police laboratory ballistics report finding the subject shotgun to be “inoperable” because of a missing trigger mechanism, the District Attorney, while retaining the menacing charge, dismissed the criminal possession of a weapon count. The prosecutor then served additional informations charging the defendants with violating New York City Administration Code sections 436-6.6 (permits for possession and purchase of rifles and shotguns) and 436-6.9 (certificates of registration) in that they, while acting in concert, “did *119 knowingly and unlawfully possess a Winchester shotgun, 12 gage [sic] 1200 Serial Number L637609, and did not have a permit or registration for said gun.”
The defendants seek to dismiss the additional Administrative Code charges, claiming that: a shotgun, which has been found to be inoperable by the police ballistics laboratory is not a “shotgun” as a matter of law and therefore possession of such an inoperable weapon cannot be the basis for a violation of the New York City Administrative Code provisions requiring permits for and registration of “rifles” and “shotguns.” Although it seems unlikely, considering the volume of weapons cases in our city courts, this issue has not been the subject of any reported decisions located by the court or counsel and appears to be one of first impression.
THE PENAL LAW SCHEME
The defense argument that decisions defining operability under article 265 of the Penal Law (firearms and other dangerous weapons) should be applicable to the Administrative Code sections concerning rifles and shotguns has considerable support in certain parallel provisions of the two statutes. The Penal Law definition of a “firearm” (§ 265.00, subd 3) is similar to that in the Administrative Code (§ 436-6.10, subd 1); the definitions of “rifle” and “shotgun” are virtually identical (cf. Penal Law, § 265.00, subds 11,12, with Administrative Code, § 436-6.0, subds 2, 3). Furthermore, both statutes exempt certain antique firearms (Penal Law, § 265.00, subd 14; Administrative Code, § 436-6.0, subd b). The Administrative Code’s antique provision, however, will be discussed more fully below because this subdivision itself contains language directly pertinent to operability.
There are a number of article 265 of the Penal Law violations involving shotguns. For example, an unloaded shotgun is illegal if possessed on a school, college or university campus (§ 265.01, subd [3]) or if by one who has been previously convicted of a felony or serious offense (§ 265.01, subd [4]) or by one who is “certified” as not suitable (§ 265.01, subd [6]; § 265.00, subd 16). A loaded shotgun can be a deadly weapon (Penal Law, § 10.00, subd 12) or dangerous instrument (Penal Law, § 10.00, subd 13) *120 and possession by a noncitizen or possession with intent to use against another is illegal (§ 265.01, subds [5], [2], respectively). In fact, here, defendants, who were alleged to have pointed a shotgun at the complaining witness, were originally charged with subdivision (2) of section 265.01 possession of a dangerous or deadly instrument or weapon with intent to use the same unlawfully against another. When the ballistics report found the weapon to be inoperable for lack of a trigger mechanism, the District Attorney dismissed the criminal possession of a weapon charge (§ 265.01, subd [2]). There is ample precedent to support that exercise of discretion for the court, upon defense motion, would have had to dismiss that charge or any other section 265.01 charges described above. If a weapon is mechanically defective or incapable of being fired without repair or reconstruction, it is inoperable and as a matter of law it is not a weapon within the meaning of the Penal Law. (People v Donaldson, 49 AD2d 1004; People v Grillo, 15 AD2d 502, affd 11 NY2d 841; People v De Witt, 285 App Div 1157.)
The defense argues that this Penal Law concept of inoperability which precludes the finding of a “weapon” as a matter of law, should apply as well to the New York City Administrative Code permit and registration sections.
THE ADMINISTRATIVE CODE
As demonstrated above, while the possession or use of shotguns and rifles by certain persons or in certain circumstances can be an article 265 of the Penal Law violation, a shotgun or rifle, even where operable, is not a “firearm” as that term is defined in the Penal Law (§ 265.00, subd 3). Thus, in New York State, it is not necessary to have a State license to “carry, possess, repair or dispose” of such weapons (Penal Law, art 400). However, the City of New York does regulate the possession of rifles and shotguns in a comprehensive scheme set out in section 436-6.0 et seq. of the Administrative Code. The question before the court is whether one must have a permit and registration for an inoperable rifle or shotgun.
While the legislative history does not directly address the issue of inoperable shotguns it is very instructive. The *121 November 2, 1967 report of the City Council’s Committee on City Affairs in recommending the adoption of introductory number 485 states:
“The purpose of this bill is to license dealers, purchasers, owners and possessors of rifles and shotguns [and] to register all rifles and shotguns.[*]
“This bill is the result of research and public hearings conducted since April of this year by this Committee and a Sub-Committee, thereof, relative to the subject of firearms control.
“The Committee, recognizes that there presently exists an evil in the misuse of rifles and shotguns by criminals and persons not qualified to handle said weapons. The ease whereby some criminals acquire rifles and shotguns for use in the commission of a crime, which often results in murder, is of great concern to our society and this Committee.
“It is also disturbing, that persons suffering from mental illnesses may easily obtain rifles and shotguns using same to injure themselves and others.
“The fact that many persons not familiar with the proper use of rifles and shotguns accidently harm themselves and others and the easy accessibility in obtaining rifles and shotguns over the counter or by mail order, has caused this Committee to arrive at the conclusions that persons should be licensed to purchase, own, possess, carry or dispose of weapons and that all rifles and shotguns in the City of New York should be registered.” (Proceedings of Council of City of NY, vol II, July 11, 1967-Dec. 14, 1967, p 344.) The transcript of the November 14, 1967 hearings before the Honorable John V. Lindsay, Mayor, while reflecting high feelings on both sides of the gun control issue, provides little insight into or details about the issues of the scope or the intent of the proposed legislation.
The committee report indicates an intent to cover “all” rifles and shotguns and highlights the dual purpose of the legislation itself: (i) that persons should be licensed before purchasing, owning, possessing, carrying or disposing of these weapons and (ii) that each rifle and shotgun in the *122 City of New York should be registered. This approach is followed in the statutory scheme itself. Section 436-6.6 of the Administrative Code, entitled “Permits for possession and purchase of rifles and shotguns” regulates individual persons and provides in pertinent part:
“[i]t shall be unlawful to dispose of any rifle or shotgun to any person unless said person is the holder of a permit for possession and purchase of rifles and shotguns; it shall be unlawful for any person to have in his possession any rifle or shotgun unless said person is the holder of a permit for the possession and purchase of rifles and shotguns.
“The disposition of a rifle or shotgun, by any licensed dealer, to any person presenting a valid rifle and shotgun permit issued to such person, shall be conclusive proof of the legality of such disposition by the dealer” (emphasis supplied).
Section 436-6.9 entitled “Certificates of registration” envisions registration of specific weapons by persons who already hold permits and provides in part: “[i]t shall be unlawful for any person to have in his possession any rifle or shotgun unless said person is the holder of a certificate of registration for such rifle or shotgun. It shall be unlawful for any person, not a licensed dealer, to dispose of any rifle or shotgun for which he does not have a certificate of registration” (Administrative Code, § 436-6.9, subd a; emphasis supplied).
While article 400 of the Penal Law is comprehensive in its own right, the permit issued thereunder is unitary (one license shall specify the person and the weapon or weapons (§ 400, subd [7]) and the focus is on the permit to carry or possess. The Administrative Code scheme which involves the dual concept of permits for individuals and registrations for specific weapons actually has a third and equally important phase, the monitoring of the transfer or disposition of each weapon:
“Disposition of rifles and shotguns — No person lawfully in possession of a rifle or shotgun shall dispose of same except to a licensed dealer in firearms, licensed dealer in rifles and shotguns, the holder of a valid rifle and shotgun permit, or to an exempt person as enumerated in this chapter.
*123 “Any person so disposing of a rifle or shotgun shall report the disposition on forms provided by the control board setting forth the rifle and shotgun permit number of both seller and purchaser, the make, caliber, type, model and serial number, if any, and if the seller is a licensed dealer the certificate of registration number, of all such rifles and shotguns. Such form shall be signed by both seller and purchaser and the original shall be forwarded to the control board within seventy-two hours of the disposition, one copy shall be retained by the seller, another by the purchaser” (§ 436-6.9, subd e).
The “plain and natural meaning of the language employed” (People v Ross, 61 NY2d 316, 320) by the Council drafters indicates a statutory scheme designed to have all owners or prospective owners obtain a permit, to have each rifle or shotgun have its own specific registration certificate (by make, caliber, type, model and serial number) and that every transfer be reported to the authorities within 72 hours. The concept of operability has no place in this statutory scheme. A prospective purchaser would not necessarily know if his intended purchase was truly operable but an owner’s permit would nevertheless have to be obtained. Once that weapon was purchased, whether it had been test fired or not, the owner would also have to get a registration for that weapon. In a different example, an owner with a valid permit and registration for his shotgun which became inoperable would have to retain those documents until that weapon was properly disposed of. Similarly, the owner of a shotgun in need of repair would be obliged to keep his permit and registration while transporting said weapon to and from the gunsmith. The comprehensive nature of the statutory scheme outlined above indicates an intent on the Council’s part to have universal permits and registrations.
There are two additional statutory provisions that support the conclusion that all New York City rifles and shotguns are to be registered whether operable or not. The defendants are each accused of failing to have a permit (individually) and a certificate of registration (for the specific weapon). Subdivision c of section 436-6.9 of the Administrative Code provides that the possessor have a *124 “certificate of registration valid for such weapon” and the “[flailure of any person to so exhibit [upon the demand of an officer] his certificate shall be presumptive evidence that he is not duly authorized to possess such rifle or shotgun.” Thus, even if one or all of the defendants had permits to possess, they would be presumptively guilty of violating section 436-6.9 if they failed to have a certificate of registration for serial number L637609, the weapon involved herein.
Finally, while the Penal Law’s definition of antique firearm (§ 265.00, subd 14) is similar to the Administrative Code’s “antiques and ornaments” provision, there is a distinct difference. The Administrative Code definition states “[t]he provisions of this chapter shall not apply to antique rifles and shotguns which are incapable of being fired or discharged” (§436-6.10, subd b; emphasis supplied). This language is unique to the Administrative Code and is specific evidence that the Council considered exempting certain inoperable rifles and shotguns but not others. No one has suggested that the weapon involved herein is an antique or ornamental weapon.
For the reasons stated hereinabove, I find that the Administrative Code requires that all persons possessing a rifle or shotgun in the City of New York must have a permit to so possess them and have certificates of registration for each such weapon, whether or not the particular weapon is operable. The defendant’s motion to dismiss the Administrative Code charges as a matter of law is therefore denied. Of course, it may be that the object alleged to be a shotgun here is so mangled that it will not be found to be a shotgun or that it cannot be connected with one or more of these defendants or that one of the numerous statutory exemptions applies (see Administrative Code, § 436-6.10). These are, however, issues for the fact finder at trial.

 Given the last-quoted sentence of the legislative report, it appears clear that the word “and” was omitted in this opening sentence and its insertion in brackets provides the only logical reading of the sentence.