OPINION OF THE COURT
Michael A. Gary, J.
In a matter of apparent first impression, the issue presented *680 in this case is whether a weapon must be operable at the moment of its seizure by the police in order to constitute a violation of section 10-131 (h) (1) of the Administrative Code of the City of New York.
The complaint in this case states, in pertinent part: "off. Robert J. Murray of 67PC, shield 1637 says that on or about October 4, 1989 at approximately 5:38 PM at F/0 274 E 54 St, County of Kings, State of New York * * * the deponent observed the defendants, acting in concert, in that defendant Walston and defendant Jenkins were putting dissembled[1] *111 [sic] parts of a shotgun onto defendant Demun’s person.”
Deponent further states a shotgun shell was recovered from defendant Jenkins’ person. Defendant Walston’s case was adjourned in contemplation of dismissal.
Defendants Jenkins and Demun now move to dismiss the accusatory instrument for facial insufficiency pursuant to CPL 170.30 (1) (a) and 170.35 (1) (a).
Defendants’ argument in support of their motion to dismiss is in two parts: first, they argue that the factual allegations that defendants possessed parts of a shotgun do not establish the element of possession of a shotgun; second, they contend the factual allegation that a shotgun shell was found on the person of defendant Jenkins does not satisfy the element of possession of a "loaded shotgun”.
In response, the People contend the fact that shotgun was not assembled is of no consequence since it was readily capable of being assembled. The People also urge that the Penal Law definition of "loaded firearm” (Penal Law § 265.00 [15]) should be applied here.
DISCUSSION
In order for a local criminal court accusatory instrument to be sufficient on its face it must contain nonhearsay allegations in the factual part of the information and in any supporting depositions which establish, if true, every element of the offense charged and the defendant’s commission thereof. (CPL 100.40 [1] [c]; People v Alejandro, 70 NY2d 133 [1987].)
Here, the defendants are charged pursuant to an acting in *681 concert theory with personal possession of parts of a shotgun and a shotgun shell that fit the assembled weapon in violation of section 10-131 (h) (1) of the Administrative Code.
Administrative Code § 10-131 (h) (1) provides: "It shall be unlawful for any person to carry or possess a loaded rifle or shotgun in public within the city limits. Any person who shall violate this subdivision shall be guilty of a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000), or imprisonment not exceeding one (1) year, or by both such fine and imprisonment. ”
Where there is a question as to the physical condition of a weapon, judicial focus has always been on the element of operability. (See, People v Grillo, 15 AD2d 502 [1961], affd 11 NY2d 841 [1962]; People v Harvin, 126 Misc 2d 775 [1984].)
The People filed a ballistics report to convert the complaint into an information. In the report, the ballistics expert certified that the shotgun was "functionally operable”. In a supplemental answer to defendants’ motion to dismiss, the People explain that the shotgun was found in three parts: barrel, stock and firing mechanism. They concede that a police officer assembled the parts before sending it to the ballistics lab for testing.[2] The People allege that it took approximately 15 seconds to assemble the barrel, stock and firing mechanism of the shotgun.
At the court’s direction, after defendants’ motions were filed, the shotgun shell allegedly recovered from defendant Jenkins was successfully fired from the shotgun and a second ballistics report to that effect was filed with the court.
It is well established that whether an instrument comes within the prohibition of the Penal Law, either as a firearm or as a dangerous weapon, is a question for the arbiters of fact, unless the court finds the instrument to be so beyond repair that under no circumstances can it be restored to its original condition as a gun and used as such. (People v Tardibuono, 174 Misc 305, 306 [1940].) This court’s research disclosed only *682 one reported decision where it was ruled as a matter of law that an object did not constitute a dangerous weapon. (See, People v Haskins, 190 Misc 888 [1948].)
In Haskins (supra) the defendant was charged with possession of a dangerous weapon pursuant to section 1897 (4) of the Penal Law of 1909 after the police found a .25 caliber pistol under his mattress. In that case, a police ballistics expert testified that it was impossible to fire the weapon and that it would take an expert at least one hour to make it operable. There was no evidence presented as to whether or not the defendant had any knowledge of firearms. There, the court (at 888-889) found that under the Penal Law, a weapon is "dangerous within the meaning of the statute either when it can be fired or when, with reasonable preparation, it can be made effective and fit for the use for which it was manufactured.” What constitutes a reasonable preparation, the court ruled, depends "upon the time required, the changes that have to be made in the weapon, the parts which have to be inserted and all the other attendant factors and circumstances.” (See, People v Haskins, supra, at 889.) Accordingly, that court held, as a matter of law, that defendant could not have made the weapon operable even with reasonable preparation and dismissed the charge. (See, People v Haskins, supra, at 889.)
In contrast to Haskins (supra), here we are concerned with a weapon whose operability at the time of its seizure is questionable. This factual issue is left for the trier of fact to resolve. (See, e.g., People v Cavines, 70 NY2d 882 [1987] [conviction affirmed where loaded gun jammed, was dismantled, reassembled and test fired]; People v Howard, 37 AD2d 178 [1971] [jury could properly find that a .45 caliber revolver with inoperable cylinder head and stop could be operated manually]; People v Francis, 126 AD2d 740 [1987] [.38 caliber’s revolving mechanism inoperable but could be aligned manually and discharged]; but see, People v Branch, 54 AD2d 90 [1976] [dictum][3].)
*683 Were this court to rule as a matter of law, that possession of unassembled parts of a shotgun does not violate the Administrative Code, it would usurp the power of the fact finder. Moreover, the decision as to what constitutes a shotgun should not be controlled by labels such as "dissembled” or by the procedures of the New York City Police Department’s ballistics laboratory.
As to the issue of what constitutes a "loaded shotgun”, the Administrative Code nowhere defines the term. However, as the People correctly point out, much of the Administrative Code sections are borrowed directly from article 265 of the Penal Law. Furthermore, it is clear that the City Council, when it passed the Administrative Code sections concerning the possession of shotguns and rifles, sought to regulate that possession which was not already proscribed by the Penal Law.
The Penal Law definition of a "firearm” is similar to that in the Administrative Code. (See, Penal Law § 265.00 [3]; Administrative Code § 10-301 [1].) The only distinction between the two is that where the Penal Law requires that the weapon have "one or more barrels less than eighteen inches in length” or be "made from a shotgun * * * [which] has an overall length of less than twenty-six inches” (see, Penal Law § 265.00 [3] [b], [d]), the Administrative Code (§ 10-301 [1]) only requires that the weapon be of a size which may be "concealed upon the person.” The definitions of "rifle” and "shotgun” are also similar (see, Penal Law § 265.00 [11], [12]; Administrative Code § 10-301 [2], [3]).
Here we have a shotgun which, when assembled, measures 46íó inches in length with a 29%-inch barrel. It seems the only reason defendants were not charged with a Penal Law violation is because the shotgun barrel measured in excess of the requisite 18 inches.
A "loaded firearm”, according to the Penal Law, simply means "any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm.” (See, Penal Law § 265.00 [15].) The Penal Law does not allow a would-be criminal to avoid the sanction of a felony loaded gun possession charge by *684 simply carrying around an unloaded firearm while his accomplice carries the ammunition until they are ready to commit a criminal act. So too, penal sanctions for unlawful possession of a weapon should not be defeated merely because the possessors are wily enough to carry a bulky and easily discernible full-length shotgun concealed in three parts which are readily assembled (i.e., in 15 seconds) by anyone with rudimentary knowledge.
Therefore, this court finds that the definition of loaded firearm in the Penal Law is applicable to the term loaded shotgun in the Administrative Code. Any other interpretation would do violence to the harmony with which the City Council obviously sought the Administrative Code provisions to interact with the Penal Law provisions. (See, People v Simmons, 125 Misc 2d 118 [1984].)
Accordingly, the factual allegation that defendant Jenkins, acting in concert with his codefendants, Demun and Walston, possessed parts of a shotgun and ammunition, which the ballistics reports confirmed were operable, satisfies the element of possession of a loaded shotgun in violation of Administrative Code § 10-131 (h) (1).

. Since "dissembled” does not have the meaning the People seek to give it here, the complaint will be read as if the word does not appear in the complaint. (See, Webster’s Third New International Dictionary [1986 ed], which defines "dissemble” as: "to hide under a false appearance: conceal with intent to deceive: feign”.)

. The People contend that the ballistics laboratory tests guns in the state in which they are received. Had the shotgun been received in an inoperable state, the ballistics report would have read "inoperable due to disassembly”. Therefore, since the gun was recovered from the defendants in three parts (barrel, stock and firing mechanism), and given to the ballistics lab in a state which made it functionally operable, then somewhere in the interim, the gun was assembled. Because the Police Department had exclusive possession of the weapon, this court infers that a member of the Police Department assembled the gun.

. This decision is cited for the proposition that the trial court erred when it charged the jury that if it found the weapon possessed by the defendant not capable of being discharged, but that it could be discharged with slight preparation or reasonable preparation, defendant was guilty of possession of a dangerous weapon (Penal Law former § 265.05 [2]; see 3 CJI[NY] PL art 265, Authorities & References [3] [b], at 2159 [1979]). Yet, there was no explanation for the court’s conclusion. Apart from the one-paragraph recitation that the charge was error, the rest of the five-page decision addresses the police officers’ unreasonable seizure of the weapon *683 and it is on that basis that the judgment was reversed on the law and the indictment dismissed. In addition, from the record on appeal it appears that the ammunition was never tested as per People v Shaffer (66 NY2d 663 [1985]).