People v Spencer (2025 NY Slip Op 50918(U))

[*1]

People v Spencer

2025 NY Slip Op 50918(U)

Decided on June 4, 2025

Supreme Court, New York County

Badamo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 4, 2025
Supreme Court, New York County

People of the State of New York

against
Shahiem Spencer, Defendant.

Ind. No. 75141-2024

Dawn M. Florio Law Firm, PLLC
New York City
(Dawn M. Florio of counsel)
for defendant
Alvin L. Bragg, Jr.
District Attorney
New York County
(Cesar Estrada of counsel)

Angela J. Badamo, J.

Defendant is charged with two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b], [3]), criminal possession of a weapon in the third and fourth degrees (Penal Law §§ 265.02 [1]; 265.01 [1]) and criminal possession of a firearm (Penal Law § 265.01-b [1]). He moves, pursuant to CPL sections 210.20 and 210.35, for the court's inspection of the grand jury minutes, for dismissal of the indictment or reduction of the charges, and for other relief. The People oppose the motion.[FN1]

Upon inspection of the grand jury minutes, defendant's motion to dismiss is granted to the extent of dismissing count one and count two of the indictment, which charge criminal possession of a weapon in the second degree.
Background
At the presentation of the case to a Grand Jury, the prosecutor called two parole officers of the New York State Department of Corrections and Community Supervision (NYS DOCCS) and a detective of the New York City Police Department (NYPD). In addition, the prosecutor introduced into evidence reports of firearms and fingerprints analysis and a certificate of [*2]defendant's prior conviction.

Grand Jury Presentation

Witness Testimony and Exhibits
The first parole officer witness testified that he participated in a "parole sanction search" of the residence of D.C., a person on parole who is gang affiliated. The officer stated that, during the search of the apartment, ammunition and a firearm were found in defendant's bedroom and that ammunition was found in a drawer in the kitchen. The officer testified that defendant claimed ownership of the firearm and all the ammunition.
The second parole officer to testify stated that he participated in the search and recovered a firearm from a closet in defendant's bedroom, approximately ten feet from where bullets were found in the bedroom. The officer also testified that defendant stated that he was "taking the rap, it's his, everything's his, everything in the apartment's his." A grand juror asked the number of people present in the apartment and whether there were "rounds" loaded in the weapon. The officer replied that, in addition to D.C. and defendant, three women were in the apartment and, with respect to the weapon being loaded, the officer stated, "[n]o, I don't have that information at this moment."
The NYPD detective testified that he is familiar with D.C., a "drill rapper" from the Bronx, who is on parole, and that there was a search of D.C.'s residence based upon a parole officer having "intel" that there may have been a firearm in D.C.'s possession. The detective stated that he arrested defendant for possession of a firearm and that defendant did not have a license or permit to carry a firearm. The detective also testified that the firearm and the bullets were vouchered.
Following the testimony, the prosecutor entered in evidence: (1) a NYPD Laboratory Firearms Analysis Section Report; (2) a NYS Division of Criminal Justice Services Fingerprints Comparison Report; and (3) a certificate of conviction for defendant's December 9, 2022, conviction for seventh-degree possession of a controlled substance, as Grand Jury exhibits one, two and three, respectively. The prosecutor read portions of the exhibits to the Grand Jury.
Legal Instructions
The prosecutor gave definitions for the elements of subdivision (1) (b) of criminal possession of a weapon in the second degree and instructed on the permissive presumption for intent to use unlawfully against another. As to "loaded," the prosecutor instructed that "a loaded firearm means any firearm loaded with ammunition, which may be used to discharge such firearm, or any firearm which is possessed by one who, at the same time, possesses any quantity of ammunition, which may be used to discharge such firearm." The prosecutor also stated:
So, the requirement of the gun being loaded is not technically a finding of fact that you have to make. As long as, if you do find that the ammunition was nearby or rather, in the language of the statute is, at the same time the person who possessed the firearm, also possessed ammunition.
It doesn't matter like where, whether any of the mechanisms of the gun, the ammunition was recovered.
The prosecutor then gave definitions for the elements of subdivision (3) of Criminal Possession of a Weapon in the Second Degree. A grand juror asked, "[j]ust to be clear, this specific subsection, in the first place, requires that the gun be loaded and we're inferring it's loaded from the possession of the bullets?" The prosecutor replied, "[y]es that's correct."
The prosecutor further instructed with definitions for the elements of criminal possession of a weapon in the third and fourth degrees and criminal possession of a firearm. After completing the definitions, the prosecutor gave limiting instructions on how the grand jurors could consider defendant's statements. The prosecutor also instructed that defendant's prior conviction could not be considered for propensity and that the Grand Jury must disregard testimony that D.C. was a gang member.
Sometime later, the prosecutor returned to the Grand Jury and stated that he wanted to see "where your head is at in terms of the no affirm on the two counts . . . ." The prosecutor stated, "based on my reading, maybe the issue was the question about whether a firearm was loaded and the context of our case." The prosecutor asked if the grand jurors wanted additional evidence. A grand juror replied, "I will speak on everyone's behalf. I don't know that there was any additional - - anything specific. We were looking for additional help from you, for counsel, in terms of like the evidence."
The prosecutor stated that he would not present additional evidence and that he would be asking that the Grand Jury vote again. The prosecutor stated that "it may be a little confusing based on . . . the facts that the ammunition wasn't in the weapon." The prosecutor also advised that, as their legal advisor, he would "put [the Grand Jury] on notice . . . on how other [c]ourts have treated this question . . . ." The prosecutor proceeded to discuss cases from the Appellate Division, First and Third Departments, and a case from Kings County Criminal Court. For each case, the prosecutor gave a summary of the facts as well as the court's holding.
For People v Gordian, 99 AD3d 538 (1st Dept 2012), the prosecutor stated:
The Court in that case said defendant was arrested while carrying a bag containing an unloaded .22 caliber revolver and eight loose rounds of .22 caliber ammunition.
Criminal possession of a weapon in the second degree involves the possession of a loaded firearm.
The Penal Law 265.00 provides that loaded firearm means any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm.
And then importantly (emphasis added) the Court says there is no dispute that defendant possessed a loaded firearm or a loaded weapon under this legal definition.
For People v Walston, 147 Misc 2d 679 (Crim Ct, Kings County 1990), a co-defendant case involving a disassembled firearm, the prosecutor stated:
The Court in this case said a loaded firearm according to the Penal Law simply means any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm. The Penal Law does not allow a would-be criminal to avoid the sanction of a loaded gun possession charge by . . . simply carrying around an unloaded firearm while his accomplice carries the ammunition until they are ready to commit a criminal act.
With regard to People v McCoy, 169 AD3d 1260 (3d Dept 2019), the prosecutor told the Grand Jury that a weapon and ammunition corresponding to the weapon were found in a closet. The prosecutor advised that "the weapon itself didn't possess the ammunition" and stated:
According to the testimony, the police recovered a .25 caliber semiautomatic pistol [with] an appropriate magazine containing a quantity of ammunition.
There is simply no merit to defendant's argument that the firearms cannot be considered loaded within the meaning of Penal Law 265.03, [subdivision] three, because the associated ammunition was found separate from the firearms. This one is from the Appellate Division 3d. The prosecutor then discussed People v Watts, 215 AD2d 1170 (3d Dept 2023), stating:
Here the Court said these facts permitted the jury to conclude that the defendant had dominion and control over the firearm, which was located underneath the seat, and the ammunition, which was located in a duffel bag behind the seat, such as that he constructively possessed them. And this just goes on and emphasis it was a jury who would have reasonably inferred from that that upheld the conviction that it accounted as - - counted as a loaded firearm.
After giving the Grand Jury the case law, the prosecutor stated as follows:
The last thing that I will just say is that this isn't a Grand Jury unlike a trial jury where a case would need to be proven beyond a reasonable doubt. Here the standard is whether there is legally sufficient evidence to conclude that [defendant] possessed a loaded firearm. I have read to you not only from the Penal Law itself, the words from the - - from our law that says what constitutes of a loaded firearm but I've also read to you four different opinions from Judges from different courts, different levels that interpret this in the situation such as the one that we had here or at least a similar, at least in my interpretation, similar in the situation (emphasis added) where that for both the Penal Law and for the case law to help you guys in making that determination. In response to a grand juror's request for the history of the cases from the appellate level and the Court of Appeals, the prosecutor replied:
I don't believe I have the Appellate history here. As your legal adviser, I am telling you that they are still valid precedence [sic], I will leave it at that. I don't have the Appellate history with me or the citation for the brief to reargue, but as your legal adviser, I am telling you that this is the law as it stands and these cases are good law.
The grand juror continued to ask for appellate history and the prosecutor replied that it might be "beyond the scope of this particular inquiry" and that his job was to tell the Grand Jury what the law is. The grand juror disagreed, stating, "it would matter if it was modified." And the prosecutor responded:
I am telling you as your legal adviser it has not been reversed. As far as I can research on my own, these have not been reversed, it's still good law of three different Appellate Division and one trial courts.
A grand juror asked, "[a]nd the first case you said there was no dispute. By no dispute do you mean neither party disputed it or that the [c]ourt was saying that that was the determination?" The prosecutor replied, "I will let the case stand for itself, but I believe it's from the latter that the [c]ourt says that there is no legal dispute as to whether that count[s] as a loaded firearm." A grand juror then stated, "It sounded to me like . . . ," whereupon the prosecutor interrupted, stating, "I think that if based on my, you know, as a lawyer like if it weren't in [*3]dispute probably wouldn't be in the Appellate Division. So it wouldn't have been appealed." The grand juror replied, "[n]o, it's a separate question from appeal, but you said the case stands as you read it, fine."
The prosecutor proceeded to give definitions for the elements of Penal Law § 265.03 (1) (b). Following the definitions, a grand juror asked, "[l]egally intends to use it illegally?" In response, the prosecutor stated:
I think - - I don't think the law makes the [distinction] between those two. Between like legal use and illegal use, the law hasn't really in terms of that later on like, you know, there would be like justification defense like whether somebody could claim self-defense, I think that might be where you are going, but in terms of the just statutory text, they don't make a distinction between legal or illegal [use], that is something that would be raised during litigation and at trial.

 The prosecutor concluded his instructions and the presentation by reading definitions for the elements of Penal Law § 265.03 (3).
 
 Discussion and Conclusion

At a Grand Jury proceeding, "the prosecutor performs the dual role of advocate and public officer, charged with the duty not only to secure indictments but also to see that justice is done . . . " (People v Lancaster, 69 NY2d 20, 26 [1987], citing People v Pelchat, 62 NY2d 97, 105 [1984]). The Grand Jury may seek legal advice only from the court and the prosecutor and the prosecutor's "duty of fair dealing extends not only to the submission of evidence, but also to instructions on the law . . . " (CPL 190.25 [6]; Lancaster at 26, citing People v Di Falco, 44 NY2d 482, 486-487 [1978], and Matter of Report of Special Grand Jury, 77 AD2d 199, 202 [4th Dept 1980]). Although instructions to the Grand Jury need not be as precise as instructions given to a petit jury, "they may not be so misleading or incomplete as to substantially undermine the integrity of the proceedings" (People v Caracciola, 78 NY2d 1021, 1022 [1991], citing People v Batashure, 75 NY2d 306, 311-312 [1990]). If the prosecutor's legal instructions "were too confusing to have been understood by the Grand Jury in considering the charges," dismissal is warranted (Carraciola at 1022). 
Here, the instructions for criminal possession of a weapon in the second degree included incorrect explanations of the applicable legal concepts and were too confusing. Although the prosecutor initially instructed properly on the alternate definitions for "loaded," immediately thereafter, the prosecutor gave a misleading and confusing instruction. The prosecutor stated that the "requirement of the gun being loaded is not technically a finding of fact" that the Grand Jury was required to make. The prosecutor also stated that it did not matter where the ammunition or "mechanisms of the gun" were recovered. Compounding the incorrect and confusing instructions, rather than restating definitions and advising that the Grand Jury's factual findings and application of the law controlled, the prosecutor responded affirmatively as to the Grand Jury "inferring" that the firearm was loaded from "possession of the bullets." 
After the Grand Jury took no action on the second-degree weapon possession counts, the prosecutor acknowledged that there was confusion but failed to address it properly. Instead, the prosecutor's instructions regarding case law improperly impinged on the Grand Jury's assessment of the evidence and whether it sufficiently set forth that the firearm was loaded. Following a long discourse about the facts and holdings, the prosecutor injected his own opinion of what facts would establish the element, stating that he believed that the cited cases involved situations [*4]similar to defendant's case. And, presumably as an effort to stress the weight and pertinence of the cases, the prosecutor emphasized that they involved a higher standard of proof and were the decisions of jurists, including appellate judges. Moreover, after debating a grand juror regarding appellate history, the prosecutor instructed that the cases were "good law." Finally, adding more to the muddle, the prosecutor instructed that the law does not distinguish between "legal" and "illegal," referencing justification as "something that would be raised during litigation and at trial." 
All told, the prosecutor's instructions on criminal possession of a weapon in the second degree were too confusing, misleading and, in parts, erroneous. Moreover, the instructions encroached upon the Grand Jury's independent assessment of the evidence and application of the law. The legal instructions impaired the proceedings and gave rise to the possibility of prejudice with respect to the charges of criminal possession of a weapon in the second degree. Accordingly, counts one and two of the indictment are dismissed. Given that there is no indication that the prosecutor acted in bad faith, with any improper motive or in an attempt to gain an advantage over defendant, the People are granted leave to re-present those counts to another Grand Jury no later than July 7, 2025.
In light of the court's determination, the remaining branches of defendant's motion are held in abeyance until July 7, 2025, or the date upon which the People advise how they will proceed, whichever is earliest. 
This constitutes the decision and order of the court.
Dated: June 4, 2025
New York, New York 
ENTER: 
ANGELA J. BADAMO, A.J.S.C.

Footnotes

Footnote 1:In connection with the preparation of this decision and order, the court considered the following: (1) Defendant's Notice of Motion and Affirmation in Support dated March 25, 2025; and (2) People's Affirmation in Response dated March 28, 2025.